Douglas L. ARENTS, Marcia A. Arents, Thomas J. DiCristo, Mary Jo DiCristo, Lidia Dubinski, Marc T. Erickson, Nancy E. Erickson, Lee A. Lycan, Ellen L. Lycan, James A. Mathes, Gail A. Mathes, Mary Jo McGavock, Robert McGavock, Donna McGavock, Mary Mueller, Robert W. Roth, Barbara L. Roth, Jacque R. Sommers and Corinne M. Sommers,† Plaintiffs-Appellants-Cross-Respondents,

v.

ANR PIPELINE COMPANY, Defendant-Respondent-Cross-Appellant.††

Court of Appeals

*No. 03–1488. Submitted on briefs May 6, 2004. —Decided March 31, 2005.*

2005 WI App 61

(Also reported in 696 N.W.2d 194.)

---

† Petition for review denied 7-28-05.
†† Petition for review denied 7-28-05.

177

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *Robert W. Roth* of *Davis & Kuelthau*, Brookfield, and *Kevin J. Lyons, William L. Shenkenberg,* and *Tyson A. Ciepluch* of *Davis & Kuelthau*, Milwaukee.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Thomas M. Pyper* and *Cynthia L. Buchko* of *Whyte Hirschboeck Dudek S.C.*, Madison.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Douglas L. Arents, Marcia A. Arents, Thomas J. DiCristo, Mary Jo DiCristo, Lidia Dubinski, Marc T. Erickson, Nancy E. Erickson, Lee A. Lycan, Ellen L. Lycan, James A. Mathes, Gail A. Mathes, Mary Jo McGavock, Robert McGavock, Donna McGavock, Mary Mueller, Robert W. Roth, Barbara L. Roth, Jacque R. Sommers and Corinne M. Sommers (collectively, the Landowners) appeal judgments resulting from jury awards of just compensation. In this condemnation proceeding ANR Pipeline Company condemned parts of the Landowners' properties for the purpose of installing a natural gas transmission pipeline.

¶ 2. The Landowners contend the judgments should be reversed and the case remanded for a new trial on several grounds: (1) the trial court erroneously excluded expert testimony regarding the price prospective buyers would pay for property containing a natural gas transmission pipeline; (2) the trial court unreasonably excluded evidence related to their duty to

disclose real estate defects and improvements pursuant to WIS. STAT. ch. 709 (2003–04);[1] (3) the trial court failed to properly instruct the jury regarding the disclosure requirements of ch. 709; (4) the trial court erroneously excluded expert testimony regarding safety issues and evidence of "fear and stigma" of the gas pipeline as it affects the hypothetical sale used to measure loss of value in a condemnation action; (5) the trial court erred by allowing ANR Pipeline Company to present expert evidence that did not constitute a "whole property" evaluation and analysis of severance damages under WIS. STAT. § 32.09; (6) the trial court deprived them of numerous constitutional guarantees, including just compensation and both procedural and substantive due process; and (7) they are entitled to a new trial in the interest of justice.

¶ 3. ANR Pipeline Company cross-appeals, arguing WIS. STAT. § 806.07(1)(a) and (h) do not authorize a trial court to vacate and reenter a judgment solely to extend the time for filing an appeal where, as here, there was no mistake in the entry of the judgments by the trial court and the Landowners should have discovered the date of entry prior to the expiration of the appeal deadline. Furthermore, ANR argues that a § 806.07 motion to vacate is untimely where, again as here, the Landowners waited two months after learning a judgment had been entered before filing the motion to vacate.

¶ 4. We conclude the trial court properly exercised its discretion by excluding the aforementioned evidence and by refusing to submit the jury instruction on disclosure requirements under WIS. STAT. ch. 709. We

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

therefore affirm. We further conclude the Landowners waived their objection to the appraisal methodology employed by ANR's appraisers by failing to preserve the issue for appeal. We reject the Landowners' constitutional claims and deny the Landowners' request for a new trial. Finally, we affirm on the cross-appeal and conclude the trial court, in its exercise of discretion, had sufficient evidence to sustain its findings.

## FACTS[2]

¶ 5. This appeal arises from a condemnation action pursuant to WIS. STAT. ch. 32, Wisconsin's general eminent domain chapter. The Landowners consist of ten families whose homesteads and other land were condemned in 1997 when ANR decided to construct a natural gas transmission pipeline through approxi-

---

[2] WISCONSIN STAT. RULE 809.19(1)(d) and (e) (2001–02) requires the parties to provide in their briefs separate sections for their "statement of facts relevant to the issues presented for review" and argument. In their appeal, the Landowners have, inappropriately, interspersed legal argument and "spin" into what should have been an objective recitation of the factual occurrences of this case. "[F]acts must be stated with absolute, uncompromising accuracy. They should never be overstated — or understated, or 'fudged' in — any manner." Judge William Eich, *Writing the Persuasive Brief,* WISCONSIN LAWYER MAGAZINE, Vol. 76, No. 2 (Feb. 2003). The fact section of a brief is no place for argument.

Furthermore, in its cross-appeal, ANR's fact section contains few citations to the record and, for the most part, cites only to its own appendix. This is also improper. Such failure is a violation of WIS. STAT. RULE 809.19(1)(d) and (3) (2001–02) of the Rules of Appellate Procedure which requires parties to set out facts "relevant to the issues presented for review, with appropriate references *to the record.*" (Emphasis added.)

mately eleven miles of suburban Waukesha County near the Landowners' homes.

¶ 6. The pipeline, which is now completely constructed, is generally contained within a corridor also containing high voltage electric transmission lines. The electric lines predated the pipeline by many years. This utility corridor runs across the Landowners' properties and contains both the electric lines above ground and the natural gas pipeline below ground.[3]

¶ 7. The pipeline is a major transmission line, a thirty-inch diameter steel pipe that transports large volumes of natural gas, is buried about four feet underground and is under 900 pounds of pressure per square inch. The pipeline is not visible other than certain aboveground stakes noting the presence of the pipeline. Natural gas transported through this pipeline is highly explosive and does not contain any odorant, unlike, for example, natural gas contained in pipes directly delivering gas to residences for home use. As proposed and built, the pipeline came within 100 feet or so of some Landowners' residences. The Landowners' understanding of the current law, pursuant to Wis. Stat. ch. 709, is if any of them were to place their property for sale, in addition to disclosing the presence of the pipeline, they would have to disclose the conditions the pipeline brings to their property, which, according to the Landowners, is that an odorless, dangerous gas passes through their properties and that a breach of the pipeline could result in catastrophe.

¶ 8. ANR initiated the condemnation proceeding of the properties for the purpose of taking both temporary and permanent easements to install and maintain

---

[3] The gas pipeline does not run under the electric lines on two Landowners' properties.

the pipeline. On March 4, 1999 and September 8, 2002, ANR filed a *lis pendens* taking legal possession of easement rights on the Landowners' properties. The Waukesha County Condemnation Commission heard the case and awarded compensation to the Landowners.

¶ 9. Nine of ten Landowners and ANR appealed the Commission's decision, pursuant to WIS. STAT. § 32.06(10). The only issue litigated was just compensation for the Landowners.

¶ 10. ANR filed numerous motions in limine seeking to prohibit the introduction of certain evidence by the Landowners, particularly evidence concerning the alleged dangers brought to the land by the pipeline. Shortly before the trial, some of these motions were granted and others denied. A jury trial was held and judgment was entered in ANR's favor on eight of the ten claims.[4] The Landowners appeal those judgments.

## DISCUSSION

### *The Appeal*

¶ 11. The sole issues to be tried in an eminent domain case are questions of title and just compensation. WIS. STAT. § 32.05(11); *also Rademann v. DOT*, 2002 WI App 59, ¶ 13, 252 Wis. 2d 191, 642 N.W.2d 600. Here we address only the issue of just compensation. The rules governing determination of just compensation are provided in WIS. STAT. § 32.09:

[4] Seven of the ten Landowners received a jury verdict less than the condemnation award; one Landowner, the Lycans, received the same amount and two Landowners, the McGavocks and the Sommers, received a jury award greater than the condemnation award.

In all matters involving the determination of just compensation in eminent domain proceedings, the following rules shall be followed:

(1) The compensation so determined . . . for the purpose of determining whether severance damages exist shall be as of the date of evaluation as fixed by s. 32.05(7)(c) or 32.06(7).

(1m) As a basis for determining value, . . . a court may consider the price and other terms and circumstances of any good faith sale or contract to sell and purchase comparable property . . . .

. . . .

(6g) In the case of the taking of an easement, the compensation to be paid by the condemnor shall be determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the items of loss or damage to the property enumerated in sub. (6)(a) to (g) where shown to exist.

¶ 12. The admission or exclusion of evidence regarding fair market value in condemnation cases is left to the trial court's discretion. *Rademann*, 252 Wis. 2d 191, ¶ 15. The trial court has broad discretion in making evidentiary rulings. *Martindale v. Ripp,* 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. We will sustain the trial court's evidentiary rulings if the trial court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Id*.

187

¶ 13. We first address whether the trial court reasonably excluded the introduction of certain expert testimony proffered by the Landowners. We assess whether the trial court properly exercised its discretion in excluding this expert testimony under WIS. STAT. § 907.02. Expert testimony is admissible if the witness is qualified as an expert and has specialized knowledge that is relevant because it will assist the trier of fact in understanding the evidence or determining a fact at issue. *See State v. Davis*, 2002 WI 75, ¶ 17, 254 Wis. 2d 1, 645 N.W.2d 913. The admissibility of expert evidence is left to the sound discretion of the trial court. *State v. Brewer*, 195 Wis. 2d 295, 305, 536 N.W.2d 406 (Ct. App. 1995). However, "[a]ny relevant conclusions which are supported by a qualified witness should be received unless there are other reasons for exclusion." *State v. Donner*, 192 Wis. 2d 305, 316, 531 N.W.2d 369 (Ct. App. 1995) (citation omitted). Expert testimony will be excluded only if the testimony is superfluous or a waste of time. *Id.*

*Evidentiary Decisions*

¶ 14. Before we discuss the trial court's evidentiary decisions, we first discuss what evidence may be relevant in determining the fair market value of condemned property in eminent domain proceedings. In a partial takings case, like the one here, the measure of just compensation is the difference between the fair market value of the whole property before the taking and the fair market value of the remaining property immediately after the taking. WIS. STAT. § 32.09(6); *also Rademann*, 252 Wis. 2d 191, ¶ 13. This difference in

value is referred to as severance damages. *See* § 32.09(6)(e). Severance damages are defined as "the diminution in the fair market value of the remaining land that occurs because of [a] taking." *Alsum v. DOT*, 2004 WI App 196, ¶ 12, 276 Wis. 2d 654, 689 N.W.2d 68. Fair market value is defined as that amount which can be realized on sale by an owner willing, but not compelled, to sell to a purchaser willing and able, but not obliged, to buy. *Milwaukee Rescue Mission, Inc. v. Redevelopment Auth. of the City of Milwaukee*, 161 Wis. 2d 472, 482, 468 N.W.2d. 663 (1991).

¶ 15. Evidence of comparable sales may be considered in determining the fair market value of the whole property immediately after the taking. *See* Wis. Stat. § 32.09(1m). In addition, any factor affecting the value of property that could influence or sway the decision of a prospective buyer should be considered in the valuation of property in a condemnation proceeding. *Clarmar Realty Co., Inc. v. Redevelopment Auth. of the City of Milwaukee*, 129 Wis. 2d 81, 91, 383 N.W.2d 890 (1986). A nonexhaustive list of appropriate factors is set forth in Wis. Stat. § 32.09(6)(a)-(g); other appropriate factors may be considered where they are relevant and not remote or speculative.

¶ 16. A major issue presented here is the admissibility of evidence regarding the dangers of the presence of a natural gas transmission pipeline on condemned property to establish the diminution in value of that property. As we explained, any factor affecting the value of property that could influence a prospective buyer in his or her purchasing decision should be considered in the valuation of property in a condemna-

189

tion proceeding. *Clarmar Realty Co., Inc.*, 129 Wis. 2d at 91. It is logical and reasonable to allow evidence of what the Landowners label "fear and stigma" of the pipeline's presence on their properties; the presence of the gas pipeline on the properties could conceivably result in a general reluctance of prospective buyers to buy the properties. Such reluctance is usually caused by public apprehension of danger the pipeline may present.

¶ 17. Numerous jurisdictions throughout the country have admitted evidence regarding fear and safety concerns of natural gas transmission pipelines, electrical transmission lines and oil and gasoline pipelines in partial takings cases such as the one here.[5] The primary guiding principle in these cases in determining the admissibility of this evidence is whether the evidence is relevant; in other words, has a qualified expert, such as a person involved in the buying or selling of real estate (real estate agent or broker, or a real estate appraiser), successfully drawn the pertinent nexus in the calculation of damages between evidence of that fear and the fair market value of the property being condemned following the taking.

¶ 18. This approach is in accord with Wisconsin's liberal rules governing the admissibility of expert evidence under Wis. Stat. § 907.02, which is tempered only

---

[5] *See* Vitauts M. Gulbis, Annotation, *Fear of Powerline, Gas or Oil Pipeline, or Related Structure as Element of Damages in Easement Condemnation Proceeding*, 23 A.L.R. 4th 631 (1983), for a thorough review and analysis of the state and federal eminent domain cases which have determined whether, and under what circumstances, the measure of damages include the fear or apprehension of danger due to the installation or maintenance of an electric transmission line or a natural gas, oil, or other chemical pipeline.

190

by the limitation that evidence must be probative and not speculative, remote or a waste of time. *See* Wis. Stat. §§ 904.01–.03. Accordingly, we conclude that where the requisite nexus has been established by a qualified expert between the evidence of fear regarding the presence of a natural gas transmission pipeline on condemned property and the fair market value of that property following the taking and the evidence is relevant and not speculative, remote or a waste of time, such evidence may be admissible in a condemnation proceeding to determine the diminution value of that property. Applying these principles, we analyze the trial court's evidentiary decisions.

¶ 19. The Landowners argue the trial court erroneously exercised its discretion by excluding survey evidence proferred by Dr. James W. Peltier and stigma, fear and safety evidence to be presented by Benjamin J. Pooler, Richard Kuprewicz, David Jansson, Edward Zalatel and Bruce Nilles. The Landowners also argue the trial court improperly excluded evidence related to the duties of disclosure under Wis. Stat. ch. 709. Under the facts of this record, we conclude the trial court reasonably exercised its discretion by excluding this evidence.[6]

*Survey Evidence*

¶ 20. The Landowners argue the trial court erred in excluding survey evidence, relevant to establishing the decrease in market value of their properties. The

---

[6] As we explain, the trial court did not issue a final ruling on admissibility of Pooler's and Kuprewicz's testimony. Our conclusion that the trial court reasonably exercised its discretion in excluding testimony pertains to the testimony of Jansson, Zalatel and Nilles.

Landowners attempted to introduce into evidence a marketing survey and its results conducted by Dr. James W. Peltier, chairman of the marketing development department at the University of Wisconsin-Whitewater. Peltier was retained by the Landowners to conduct a telephone survey of homeowners in Waukesha County, the results of which, the Landowners allege, demonstrate a reduction in the market value of the Landowners' properties due to the presence of the pipeline. The survey asked 418 local homeowners whether they would purchase a property with a natural gas pipeline on it, whether the presence of the natural gas pipeline would affect the price they would pay for the property and whether risks associated with natural gas pipelines would concern them. Peltier conducted the survey in April 2002.

¶ 21. Before trial, ANR moved to exclude this evidence. The trial court granted ANR's motion and prevented Peltier from testifying about his survey and its results.

¶ 22. The Landowners argue the survey was relevant because "it tends to prove that the average person will spend approximately 20% less than the going market rate for property if the property contains a transmission gas pipeline." The Landowners also argue the study would assist the jury in "measuring the effect of the pipeline on potential buyers; the comparable sales evidence was lacking because it involved uneducated buyers." The survey evidence, the Landowners assert, measured the effect of the pipeline's presence on the prospective buyer.

¶ 23. In the alternative, the Landowners contend the survey evidence was admissible under Wis. Stat. § 32.09(6) or (6g). Neither section, the Landowners assert, limits the type of evidence admissible for proving

loss caused by a taking to those items enumerated therein. Although we agree that § 32.09(6) is not an exhaustive list of items proving loss caused by a taking, we are not persuaded by any of the Landowners' arguments.

¶ 24. We conclude the trial court reasonably exercised its discretion by excluding this evidence. The trial court concluded the survey was speculative, the data gathered by the survey was not properly connected to market data, the survey was irrelevant because the questions failed to consider certain positive features of each house affected by the pipeline, the data was irrelevant because it did not poll the perceptions of home buyers in 1999 but in 2002, and the survey questions invaded the jury's province by asking questions that go directly to issues to be determined by the jury (the fair market value of the properties). The trial court closely examined Peltier's survey instrument and its results and, after careful consideration, determined it was not relevant.

¶ 25. We note that survey data was admitted as evidence on behalf of the Landowners via their real estate appraiser expert, Kurt Kielisch. Kielisch conducted his own survey and connected the data from that survey to the fair market value of the properties before and after the takings. Kielisch surveyed real estate agents doing business in the area affected by the pipeline. Kielisch assigned a 15% diminution in value to the Landowners' properties due to "fear" or "stigma" based on a comparable sales analysis. His analysis considered the responses by the agents, which demonstrated the pipeline devalued the Landowners' properties. Thus, the Landowners were able to introduce some survey evidence, just not the evidence offered by Peltier.

*"Fear and Stigma" and Safety Evidence*

¶ 26. The Landowners next argue the trial court erroneously excluded safety evidence and evidence of fear and stigma related to the pipelines offered by Benjamin J. Pooler, Richard Kuprewicz, David Jansson, Edward Zalatel and Bruce Nilles.

¶ 27. ANR counters that "where there is market evidence available for determining value no other evidence of value is relevant or admissible in a condemnation proceeding . . . ." ANR asserts that under *Waste Management of Wisconsin, Inc. v. Kenosha County Board of Review*, 184 Wis. 2d 541, 556–57, 516 N.W.2d 695 (1994), comparable sales, if available, serve as the only relevant evidence. We conclude the trial court reasonably exercised its discretion by excluding this evidence but disagree with ANR that the availability of comparable sales evidence serves as the basis for supporting the trial court's decision.

■

¶ 28. The permissible use of comparable sales evidence in condemnation proceedings was first recognized in *Huse v. Milwaukee County Expressway Commission*, 16 Wis. 2d 225, 228, 114 N.W.2d 429 (1962). The *Huse* court noted that evidence of comparable sales is generally admissible where the sale is voluntary, not too remote in point in time or is not otherwise shown to have no probative value. *Id.* The permissible use of comparable sales evidence has been codified at WIS. STAT. § 32.09(1m), which states a "court *may* consider the price and other terms and circumstances of any good faith sale or contract to sell and purchase comparable property" in determining fair market value. (Emphasis added.) We read this section to mean that a court may consider comparable sales in determining fair market value but is not so required.

¶ 29. Our review of eminent domain case law in Wisconsin does not support ANR's conclusion that evidence of comparable sales is the only relevant and therefore admissible evidence in determining fair market value where such evidence is available. Indeed, the only case cited by ANR in support of its contention, *Waste Management,* is a tax assessment case and not helpful in this condemnation proceeding. In addition, ANR mischaracterizes the rule stated in *Waste Management,* which holds that comparable sales "represent the best information with which to determine fair market value." *Waste Management,* 184 Wis. 2d at 556. Nowhere in the opinion does the *Waste Management* court declare that comparable sales are the only admissible evidence to determine fair market value. We conclude ANR's argument is without merit.

¶ 30. Furthermore, as discussed above, we concluded evidence of fear regarding the presence of a natural gas transmission pipeline on a condemnee's property may be admissible under Wisconsin's rules of evidence governing relevance and the admissibility of expert evidence. Admitting this type of evidence is in accord with the general rule stated in *Clarmar Realty,* that every factor that affects value and could influence a potential buyer should be considered in the valuation of the property in a condemnation proceeding. *Clarmar Realty,* 129 Wis. 2d at 91. We now turn to review the trial court's decisions excluding the "fear and stigma" and safety evidence offered by the Landowners.

¶ 31. The trial court excluded the testimony of Jansson, Zalatel and Nilles. The trial court also indicated it was inclined to exclude the testimony of Pooler and Kuprewicz because their testimony would be irrel-

evant, would lead to jury confusion and would result in the jury determining the fair market value of the properties on improper grounds. ANR points out the trial court did not conclusively exclude the testimony of Pooler and Kuprewicz but instead took the decision under advisement pending its review of Pooler's report and Pooler's and Kuprewicz's depositions. On the first day of trial, the Landowners revisited the issue and again the trial court said it would consider whether they could testify. The Landowners did not call Pooler and Kuprewicz as witnesses. The trial court never issued a definitive ruling and the record does not show the Landowners sought one. Thus, other than expressing its intentions not to allow them to testify, the trial court never conclusively ruled Pooler and Kuprewicz could not testify. We conclude the Landowners waived their objection to the exclusion of Pooler's and Kuprewicz's testimony by failing to obtain a definitive ruling from the court. *See State v. Kutz,* 2003 WI App 205, ¶ 27, 267 Wis. 2d 531, 671 N.W.2d 660, *review denied,* 2004 WI 20, 269 Wis. 2d 198, 675 N.W.2d 804 (WI Jan. 23, 2004) (No. 02–1670–CR). We further conclude the trial court properly exercised its discretion by excluding the testimony of Jansson, Zalatel and Nilles.

¶ 32. The Landowners retained Jansson to analyze pipeline failure data published by the Office of Pipeline Safety (OPS) and the National Safety Council (NSC). Jansson opined the data available to the public regarding natural gas pipeline accidents from the OPS and NCS was flawed.

¶ 33. The Landowners offered testimony of Edward Zalatel, an electrical engineer, to address safety issues regarding high voltage electrical transmission

wires and facilities. Nilles would have testified that the OPS regulation of natural gas transmission pipeline companies is deficient. Nilles concluded, "[i]n the absence of a vigorous enforcement program that actually imposes civil and criminal sanctions, pipeline companies have substantially less incentive to comply with basic safety and environmental protection requirements."

¶ 34. The Landowners contend the trial court erred by disallowing the testimony of Jansson, Zalatel and Nilles whose testimony, in the Landowners' opinion, would have been relevant in establishing the effect of the pipeline on a hypothetical sale used to measure loss of value in a condemnation action. However, while the trial court did exclude the generalized stigma or safety testimony offered through these experts, its pretrial oral rulings demonstrate the trial court did not foreclose such evidence so long as it related to the market value of the Landowners' properties. The trial court allowed the Landowners' appraisers, such as Kielisch, to testify about "fear and stigma" and how it purportedly decreased the Landowners' property values.

¶ 35. The record shows the trial court, using a rational mental process, reached a decision based on the facts of record, relying on the appropriate and applicable law. The trial court allowed discussion of the fear and stigma evidence as well as the safety evidence within the context of diminution of property values but concluded any discussion not probative of the fair market value of the properties would confuse the jury and thus not assist the jury in its decision-making process. We conclude the trial court's discretionary ruling was not erroneous.

197

¶ 36. The Landowners argue the trial court erroneously excluded evidence related to the duty to disclose certain real estate defects in residential real estate transactions, as codified in WIS. STAT. ch. 709. Under ch. 709, sellers of residential property are required to disclose certain defects on their property when the property is shown to prospective buyers. The Landowners contend that because they now know the potential dangers of a major natural gas transmission pipeline located near their residences, they will be under a legal duty to disclose all the dangers when they attempt to sell their properties. As such, the Landowners argue, the jury must be informed of this duty to disclose in order to properly determine the diminution in value of the condemned properties. The Landowners intended to introduce this evidence through Attorney Mark C. Young. However, the Landowners claim the trial court excluded his testimony and thus no evidence was introduced regarding the real estate disclosure requirements under ch. 709.

¶ 37. ANR counters that the Landowners waived any objection to excluding Young's testimony and other WIS. STAT. ch. 709 evidence by stipulating at the October 3, 2002 motion in limine hearing and after the first day of trial that, if the Landowners could introduce evidence regarding the size and pressure of the 30" pipeline and evidence that the natural gas in the pipeline is not odorized, Young's testimony would not be required. ANR also points out this stipulation pertained to evidence regarding pipeline incidents, such as the pipeline incident at Carlsbad, New Mexico. ANR further argues that, even if the Landowners did not waive their

objections, the trial court properly excluded this evidence. In addition, ANR argues evidence of ch. 709 provisions is not relevant to, and is inadmissible in, a condemnation action where actual market data exists.

¶ 38. We disagree with the Landowners' claims that the trial court excluded all evidence pertaining to the disclosure requirements under Wis. Stat. ch. 709. The trial court allowed the Landowners to present evidence that they would be required under ch. 709 to disclose information to potential buyers about the pipeline's existence. In addition, at the October 3, 2002 motions in limine hearing, the Landowners stipulated Young's testimony was unnecessary if they were allowed to present evidence about the size of the pipeline, the gas pressure in the pipeline and the odorlessness of the gas.

¶ 39. At trial, the Landowners again stipulated Young's testimony would be unnecessary if they were permitted to present evidence about the pipeline's characteristics. At trial, the Landowners presented evidence of the pipeline's size, the gas pressure in the pipeline and the odorlessness of the gas. These facts, and the disclosure requirements of Wis. Stat. ch. 709, were mentioned every day of trial and were addressed in both opening statements and closing arguments. Landowner James A. Mathes testified to the real estate disclosure requirements. Appraiser Kurt Kielisch acknowledged the real estate disclosure requirements, asserted these requirements were a part of his analysis and was allowed to discuss them. Joseph Fisher, an appraiser and real estate expert, discussed the real estate disclosure requirements. Landowners Mary Mueller, Mary Jo DiCristo, Marcie Arents, Ellen Lycan and Lidia Dubinski were allowed to address the real estate disclosure requirements. The Landowners cross-examined ANR's

witnesses about the real estate disclosure requirements and their role in the appraisal process.

¶ 40. Accordingly, we conclude the Landowners waived their objection to the exclusion of Young's testimony by stipulating to the introduction of evidence pertaining to the pertinent characteristics of the pipeline. Furthermore, we conclude the record shows the trial court did not erroneously exercise its discretion by limiting the scope of evidence presented to the jury relating to the disclosure requirements under Wis. Stat. ch. 709 to only that evidence introduced through Kielisch, Fisher and the Landowners.

*Jury Instruction*

¶ 41. The Landowners maintain the trial court failed to properly instruct the jury about the disclosure requirements of Wis. Stat. ch. 709. We disagree and conclude the trial court appropriately exercised its discretion.

¶ 42. A trial court is afforded great latitude when giving jury instructions. *State v. Pletz*, 2000 WI App 221, ¶ 17, 239 Wis. 2d 49, 619 N.W.2d 97. "The decision to give or not to give a requested jury instruction lies within the trial court's discretion" and will not be reversed absent an erroneous exercise of discretion. *State v. Miller*, 231 Wis. 2d 447, 464, 605 N.W.2d 567 (Ct. App. 1999). We will affirm the trial court's choice of jury instructions if the instructions accurately state the law and the instruction comports with the facts of record. *See Nommensen v. American Cont'l Ins. Co.*, 2001 WI 112, ¶ 50, 246 Wis. 2d 132, 629 N.W.2d 301.

¶ 43. Should we determine a trial court "has committed an error in administering a jury instruction, we must assess whether the miscue constitutes reversible error . . . ." *Id.*, ¶ 51. In other words, we must determine whether the substantial rights of the party requesting the instruction have been affected. *Id.* An error affects the substantial rights of a party if there is a reasonable possibility the error contributed to the outcome of the proceeding or action. *Id.*, ¶ 52. "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" *Id.* (citation omitted).

¶ 44. Here, in reaching its decision on the jury instructions and the disclosure issue, the trial court reasoned that information about the disclosure requirement is better and more appropriately conveyed by argument. The trial court further concluded the appraisers themselves did not factor the disclosure requirement into their appraisals because that is not what appraisers do, and giving the jury an instruction on the disclosure requirement would likely skew the argument in the Landowners' favor and not be helpful to the jury.

¶ 45. The trial court's rationale for not giving the proposed instruction was reasonable. The trial court observed the Landowners' proposed jury instruction on the disclosure requirements of WIS. STAT. ch. 709 would not be helpful to the jury because the issue of disclosure, in the context of this case, was factual rather than legal and therefore more conducive to argument. The trial court also observed the issue of disclosure arises in disputes between sellers and buyers of residential property, not in condemnation proceedings where the sole

issue is the value of the property taken and the value of the remaining property. In addition, the trial court concluded the proposed jury instruction would favor the plaintiffs over the defendant. "It is for the [trial] court to instruct the jury upon all the questions fairly in the case, but it is not error to refuse to emphasize any particular phase of the case in favor of either party . . . ." *Tillman v. Michigan-Wisconsin Pipe Line Co.*, 263 Wis. 596, 598, 58 N.W.2d 296 (1953) (citation omitted). We conclude the trial court properly exercised its discretion.

¶ 46. Although we are satisfied the trial court properly exercised its discretion in refusing to give the instruction, we also note that even if it did not, the Landowners have not shown their substantial rights were affected. Indeed, the Landowners make no argument that their substantial rights have been affected. They have not shown there is a reasonable possibility the result of the trial would have been different had the trial court given the proposed instruction. *See Nommensen*, 246 Wis. 2d 132, ¶ 52.

*ANR's Appraisal Experts*

¶ 47. The Landowners next argue the trial court erred by allowing ANR to present expert evidence that did not constitute a "whole property" evaluation and analysis of severance damages under WIS. STAT. § 32.09. Specifically, the Landowners challenge the testimony of ANR's experts Frank Perion and Kevin Zarem, arguing the appraisers did not value the "whole property" immediately before and immediately after the takings and, instead, "only provided values for the strip of property taken as an easement."

¶ 48. ANR counters by claiming the Landowners waived any objection to the admissibility of Perion's and Zarem's testimonies by failing to timely object while either appraiser was testifying.[7] We conclude the Landowners waived their objections to the admission of this evidence but not for the reason argued by ANR. The Landowners failed to preserve their objections because they did not object during Perion's and Zarem's testimony; the Landowners objected to this testimony only after Perion and Zarem testified and in the context of their concern about the construction of a jury verdict question.

¶ 49. The Landowners first objected to Perion's and Zarem's testimony during discussion on the verdict questions, after the appraisers testified. Indeed, the Landowners initially stated they had no objections to how Perion or Zarem valued the land, saying, "Now in truth I have no—no truck with what these witnesses have done. They've made their point that they don't want to take improvements and whole value into consideration . . . ." The Landowners then raised their concerns about Perion's and Zarem's valuation methods but only as it related to the construction of the special verdict form. Citing *Braun v. Wisconsin Electric Power Co.*, 6 Wis. 2d 262, 94 N.W.2d 593 (1959), the Landowners argued it was not possible to comply with the supreme court's instructions on the proper verdict form to be submitted to the jury in eminent domain proceedings because "neither Mr. Perion nor Mr. Zarem actually produced whole values that can be compared." The Landowners moved to strike Perion's and Zarem's testimonies or to fashion a more workable verdict form in

---

[7] At trial, ANR opposed the motion to strike the testimonies of Perion and Zarem but not on the basis of waiver, as argued here.

light of the methods employed by Perion and Zarem in determining the fair market value of their properties.

¶ 50. The trial court overruled the Landowners' objection, concluding each party presented experts who offered their views as to the fair market value of the properties and the bases for those values. The trial court acknowledged the different approaches of each expert but found no problem with any of them. It observed that since the improvements were not affected by the easement, such as a sliced-off deck or damage to a swimming pool next to a house, Zarem and Perion properly assessed the value of the whole property based on comparable sales of unimproved land and the tax-assessed value of the improvements.

¶ 51. Thus, from this exchange in the trial court, it is apparent the Landowners' sole concern regarding Zarem's and Perion's valuation of the properties pertained to the proper construction of a jury verdict form. We also note ANR did not respond that the Landowners' objection was untimely and therefore waived, as it does here, but, rather, argued their experts did in fact value the whole property of each landowner.

¶ 52. According to the record, it appears the Landowners were not objecting to the methods used by Zarem and Perion to appraise the properties. Instead, the Landowners were concerned only about the proper construction of a special verdict question based on their understanding of Wis. Stat. § 32.09. In this appeal the Landowners frame their objections as an attack on the methods followed by Zarem and Perion in their appraisals. But the record does not save them; the Landowners did not challenge the appraisers' methods at the trial but were concerned only about how to fashion a special verdict question. The Landowners have failed to preserve their objection to evidence admitted by the trial

court by not raising the objection while Zarem and Perion were testifying. *See Kutz*, 267 Wis. 2d 531, ¶ 27.

*Constitutional Violations*

¶ 53. The Landowners allege the trial court deprived them of numerous constitutional guarantees, including just compensation and both procedural and substantive due process. These constitutional arguments rest upon the Landowners' contention that the trial court erroneously failed to admit the above-noted evidence, failed to instruct the jury on Wis. STAT. ch. 709 real estate disclosure requirements and allowed ANR's witnesses to present testimony that did not measure the impact of the pipeline on the entirety of the Landowners' properties. We have resolved all these issues against the Landowners. They do not sufficiently develop an argument that explains how their constitutional rights were violated if the trial court did not err. Accordingly, we do not consider these issues further. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992).

*New Trial in the Interest of Justice*

¶ 54. Finally, the Landowners argue they are entitled to a new trial in the interest of justice. The granting of a new trial in the interest of justice rests largely in the discretion of the trial court. *Lambrecht v. State Highway Comm'n*, 34 Wis. 2d 218, 225, 148 N.W.2d 732 (1967). The power of the court to reverse in the interest of justice is exercised with reluctance and great caution and only in the event of a probable miscarriage of justice. *Besnah v. City of Fond du Lac*, 35 Wis. 2d 755, 763, 151 N.W.2d 725 (1967).

¶ 55. The Landowners do not fully develop this argument. They state, but do not support, their contention. The briefs do not disclose the precise principle or principles of law upon which their contention of error rests. The Landowners, moreover, acknowledge such a request is granted only in rare circumstances. We decline to address insufficiently developed arguments. *See Pettit*, 171 Wis. 2d at 646–47.

### *Cross-Appeal*

¶ 56. On January 14, 2003, ANR submitted eight proposed judgments to the trial court, with a copy to the Landowners' attorney. The Landowners did not file objections to the eight judgments. Between January 14 and 27, 2003, the attorneys for ANR and the Landowners generally discussed the status of the case and the entry of judgments. Both parties agreed that simultaneous entry of all ten judgments was preferable. However, ANR claims it informed the Landowners' attorney that ANR would not waive any time period the Landowners had to object to the proposed judgments and the Landowners should submit two proposed judgments for two clients (McGavock and Sommers) because ANR wanted its eight judgments entered immediately.

¶ 57. On January 27, 2003, an attorney for ANR received a telephone call from two of the Landowners' attorneys, who informed her the Landowners had learned ANR's eight proposed judgments had been signed. The Landowners' attorneys informed ANR's attorney the Landowners had wanted all ten judgments entered simultaneously and asked whether ANR would agree to "toss the judgments" that had already been signed. According to ANR, its attorney neither agreed

nor disagreed to "tossing" the judgments, instead informing the Landowners' attorney she would confer with ANR. At this time, ANR's attorney was unaware the trial court had already delivered seven of the judgments to the Waukesha County Clerk of Court for entry and the clerk had, in fact, entered the seven judgments.

¶ 58. During this same January 27, 2003 telephone conversation, the Landowners' attorneys informed ANR's attorney that when they learned the trial court had already signed the seven judgments, they were in the process of drafting a letter to the court asking it not to enter the judgments until the court received the two remaining judgments concerning McGavock and Sommers. The Landowners' attorneys told ANR's attorney they intended to deliver the letter to the trial court even though they were aware ANR's judgments had already been signed. The Landowners' January 27, 2003 letter to the trial court read as follows:

> [We] were concerned that you might sign the eight Judgments, while the other two Judgments had not yet been signed, which might inadvertently cause us to have two separate appeals because of timing. With that in mind, and after receiving Mr. Pyper's concurrence with respect to this matter, we would appreciate it if you would not sign the Judgments that have been forwarded to you from Mr. Pyper's office.

ANR contends this letter misrepresented the conversation between its attorney and the Landowners' attorneys and also failed to inform the trial court the Landowners' attorneys were aware the seven judgments had already been signed.

¶ 59. On January 29, 2003, a clerk from the Waukesha County Circuit Court called ANR's attorney and stated the judgments had been signed but not

entered. This was erroneous; the Waukesha County Clerk of Court had, in fact, already entered the seven judgments. The clerk asked ANR's attorney to submit an order to vacate the seven judgments. By a letter dated that same date, ANR's attorney informed the trial court it did not want the judgments vacated and would not be submitting such a proposed order. ANR's attorney also corrected the alleged misrepresentations of the Landowners' January 27, 2003 letter. At that time, ANR alleged its attorney was still unaware the seven judgments had already been entered; ANR's attorney indicated ANR did not oppose the trial court holding the judgments for seven days to allow the Landowners to submit their two proposed judgments.

¶ 60. On January 31, 2003, the Landowners filed two motions, a motion to vacate the verdict and judgments as void, arguing the trial court lacked subject matter jurisdiction, and a motion to withhold entry of judgments. On February 6, 2003, the Landowners' attorney filed the proposed McGavock and Sommers judgments. By letter to the trial court dated February 11, 2003, copied to the Landowners' attorney, ANR objected to the McGavock and Sommers judgments. ANR asked that the McGavock and Sommers judgments be entered at the same time as all other judgments but that entry not be delayed for the disposition of the Landowners' motions, scheduled for a hearing on March 17, 2003.

¶ 61. By letter dated February 24, 2003, ANR filed its bill of costs and supporting documents with service on the Landowners' attorney. On or about March 14, 2003, a clerk from the Waukesha County Circuit Court contacted ANR's attorneys indicating she could not docket the judgments because the docketing fee had not been paid. The clerk informed ANR that

only one fee of $5 would be required to docket the eight judgments. ANR, by letter dated March 14, 2003, submitted the $5 fee.

¶ 62. At the March 17, 2003 motion hearing, the trial court denied the Landowners' Motion to Vacate the Verdict and Judgment as Void. The trial court did not specifically hear argument or discuss the Landowners' Motion to Withhold Entry of Judgment, but after the hearing, informed all parties' attorneys the clerk of court could not docket the judgments because the docketing fee had not been paid. Thereafter, ANR's attorney learned that an additional $45 was required for docketing all ten judgments and subsequently paid the $45 docketing fee, by letter to the trial court with a copy to the Landowners' attorney.

¶ 63. On March 25, 2003, ANR's attorney received a check from the Waukesha County Clerk of Court for $62,419.11, payable to ANR; this check represented the amount due to ANR on the eight judgments. On or about the same date, ANR received, per its request, conformed copies of the eight judgments. The trial court signed all the Arents, DiCristo, Dubinski, Erickson, Lycan, Mathes and Roth judgments on January 27, 2003 and all had a "filed" stamp date of January 27, 2003. The seven judgments also contain a handwritten "docketed" date of March 20, 2003 and a handwritten time notation. The trial court signed the Sommers and McGavock judgments on February 26, 2003, which were stamp dated as "filed" on March 12, 2003, with a handwritten docket date of March 24, 2003 and a handwritten time notation. The trial judge signed the Mueller judgment on March 20, 2003, which has a "filed" stamp date of March 20, 2003, also with a handwritten time notation.

¶ 64. On or about May 5, 2003, another attorney for the Landowners contacted ANR's attorney, indicating the DiCristos wanted to pay the outstanding amount on their judgment because they were refinancing their home and it was discovered there was a lien on their property as a result of the docketed judgment. ANR's and the Landowners' attorney spoke several times and exchanged e-mail correspondence in an effort to calculate the total amount due to ANR from the DiCristos. ANR alleges that during these conversations, while determining pre-judgment interest, its attorney informed the Landowners' attorney of the January 27, 2003 date of entry of the judgments.

¶ 65. On May 19, 2003, the Landowners filed a Motion for Protective Order concerning a dispute on the production of attorney billing records. In this motion and the attorney's affidavit, the Landowners asserted an appeal had already been filed. However, a notice of appeal of the ten judgments was not filed until June 4, 2003. In that June 4, 2003 notice of appeal, the Landowners represented the judgments were entered on March 20 and 24, 2003.

¶ 66. On June 26, 2003, ANR filed a brief in Opposition to the Plaintiffs' Motions for Costs. In that brief, ANR asserted the judgments for seven of the ten properties had been entered on January 27, 2003. Within a few days, the Landowners' attorney called ANR and asked whether ANR intended to assert that date of entry in ANR's briefs on appeal.

¶ 67. On July 11, 2003, the Landowners filed a Motion to Vacate. In this motion, the Landowners indicated they had mistakenly believed the judgments had not been entered until March 20, 2003, the docketing date. The Landowners asserted that due to representations made by various clerks that the judgments

had not been entered, the seven judgments should be deemed to have been entered on March 20, 2003.

¶ 68. On August 22, 2003, the trial court issued a decision vacating and reentering the seven judgments as of March 20, 2003, the date the seven judgments were docketed. The trial court found that someone in the clerk's office misinformed both the trial judge and the Landowners regarding the entry of the seven judgments. ANR cross-appeals.

¶ 69. In its cross-appeal, ANR argues WIS. STAT. § 806.07(1)(a) and (h) do not authorize a trial court to vacate and reenter a judgment solely to extend the time for filing an appeal where, as here, there was no mistake in the entry of the judgments by the trial court and the Landowners should have discovered the date of entry prior to the expiration of the appeal deadline. Furthermore, ANR argues a § 806.07 motion to vacate is untimely where, as here, the Landowners waited two months after learning a judgment had been entered before filing the motion to vacate.

¶ 70. The trial court based its decision to vacate and reenter the judgments in question on WISCONSIN STAT. § 806.07, specifically § 806.07(1)(a) and (h). Section 806.07 addresses relief from a judgment or order and states, in relevant part,

> (1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> (a) Mistake, inadvertence, surprise, or excusable neglect;
>
> . . . .

211

(h) Any other reasons justifying relief from the operation of the judgment.

(2) The motion shall be made within a reasonable time, and, if based on sub. (1)(a) or (c), not more than one year after the judgment was entered or the order or stipulation was made . . . .

Section 806.07 attempts to achieve a balance between fairness in the resolution of disputes and the policy favoring finality of judgments. *Edland v. Wisconsin Physicians Serv. Ins. Corp.*, 210 Wis. 2d 638, 644, 563 N.W.2d 519 (1997). Section 806.07 enhances fairness in the administration of justice by authorizing a trial court to vacate judgments on various equitable grounds. *Edland*, 210 Wis. 2d at 644. One of the grounds providing a basis for vacating a judgment under § 806.07(1)(a) is mistake on the part of the trial court. *See Edland*, 210 Wis. 2d at 648.

■■■

¶ 71. A ruling on a Wis. Stat. § 806.07 motion is reviewed under an erroneous exercise of discretion standard. *Edland*, 210 Wis. 2d at 643. A trial court erroneously exercises its discretion when its decision is based upon an error of law. *Id.* Applying that standard to this case, we will uphold the trial court's grant of the Landowners' motion under § 806.07 if the statute authorizes relief from an order for the reasons provided by the trial court. *See Edland*, 210 Wis. 2d at 643–44.

¶ 72. Here, in ruling the Landowners were entitled to relief pursuant to Wis. Stat. § 806.07(1)(a) and (h), the trial court, in a written decision, stated, in part,

Fairness and justice clearly outweigh finality in this case.

212

The Court received judgments for seven landowners, waited an appropriate time for objections and signed the seven judgments (ANR had indicated that eight judgments had been submitted but they were mistaken about the submission of the Mueller judgment and another copy had to be submitted at a later date.) Subsequent correspondence indicated a desire on both parties to have one entry date so that the consolidated cases would remain on the same clock for purposes of appeal. The Court personally on several occasions confirmed with the calendar clerk that the seven judgments had not been entered. The Court reconfirmed this understanding as late in the process as March 17, 2003. The affidavits indicate that immediately after March 17 both parties checked with the clerks office, and while ANR discovered that seven judgments in question had been entered by someone other than this Court's calendar clerk on January 27th, 2003, plaintiffs' counsel was advised differently. Actually these seven judgments submitted in January were docketed on March 20, 2003.

The Court has reviewed the submissions and the case law concerning its exercise of discretion in this area. The Court concludes that the information given out by the clerks office to the Court and counsel for plaintiffs created a mistake for which relief can and should be granted under 806.07(1)(a). Indeed, the mistake was in informing the Court and plaintiffs' counsel that the seven judgments had not been entered. The mistake created a situation of injustice in that the landowners involved in the seven judgments would lose the right to appeal while three of their number had their appeal rights preserved. The Court finds that it's manifestly unfair under the circumstances that this should happen. This Court finds the erroneous communications from the clerk made for confusion. Overall, this Court finds that fairness clearly outweighs finality in this case.

213

The last assertion brings the Court to the application of 806.07(1)(h). The Court is mindful of the limited situations in which this particular section can be applied. Looking back at the history of this case, the complexities and the economy with which it had been handled up to this point in this Court's mind create a situation of extraordinary circumstances . . . .

. . . .

While it is disputed in motions after verdict, eight of the landowners did not prevail and ANR submitted judgments, seven at one time, one at another. Activity involving costs and fees required the two judgments in which the landowners prevailed from submission to be submitted later. The entire group of judgments was completed in March. As previously stated, the Court finds a clear effort on its part to see to it that there would be one date for the entry of all judgments from which the appellate clock would start to run. For a significant period of time, the Court and both parties' counsel were under the impression that the earlier judgments were being held for entry until the complete set of ten was filed. From this Court's perspective, the appeal is not only important to the landowners but meritorious and will generate rulings meriting consideration for these cases and in the future. It does upset the Court's conscience that several of the landowners whose similar issues were tried together would have to sit by and watch three of their number have their cases heard on appeal and perhaps even reversed on appeal and re-tried.

. . . The Court . . . finds that both parties understood the merits of a combined entry date. The balance still favors the landowner clients over finality . . . . The Court views the record in light of the goal of the judicial system: hearing the disputes of the parties and dispensing justice.

214

Here, the trial court determined it was appropriate to vacate and reenter the judgments on the basis of mistake by the clerk of court. We conclude the trial court properly exercised its discretion consistent with the supreme court's decision in *Edland*.

¶ 73. In *Edland*, the trial court failed to provide a copy of its Memorandum Decision and Order to the parties. *Edland*, 210 Wis. 2d at 644–45. The parties did not learn of the order until after the time to appeal had expired. *Id.* at 641. The supreme court upheld the trial court's order to vacate and reenter the order pursuant to WIS. STAT. § 806.07(1)(a), concluding the trial court's mistake in failing to send the Memorandum Decision and Order to the parties was sufficient reason to vacate and reenter the order. *Edland*, 210 Wis. 2d at 648. Here, the trial court indicated numerous misunderstandings caused by the clerk of court's office surrounding the entry of the judgments created a mistake for which relief should be granted. We conclude this was a proper exercise of discretion.

## CONCLUSION

¶ 74. We reject all the Landowners' evidentiary objections and conclude the trial court properly exercised its discretion in denying the introduction of WIS. STAT. ch. 709 real estate disclosure evidence, survey and safety evidence, evidence pertaining to the duties of disclosure under ch. 709 and evidence of stigma and fear of the gas pipeline. We further conclude the trial court properly exercised its discretion by declining to instruct the jury regarding the disclosure requirements of ch. 709. We conclude the Landowners waived their objections to the admissibility of Perion's and Zarem's testimonies because the objections were not properly

preserved. We reject the Landowners' constitutional arguments and conclude they are not entitled to a new trial in the interest of justice.

¶ 75. Furthermore, we reject ANR's cross-appeal, concluding the trial court properly exercised its discretion under WIS. STAT. § 806.07(1)(a) and (h) in vacating the seven judgments and reentering them. We therefore affirm the judgments on both the appeal and the cross-appeal.[8]

*By the Court.*—Judgments affirmed.

---

[8] The Wisconsin Utilities Association, Guardian Pipeline Co., and Wisconsin Gas Company seek leave to file amicus curiae briefs. We ordered these motions be held in abeyance until we decided at conference whether the briefs were appropriate. The motions are denied. The amicus briefs support ANR Pipeline, the prevailing party here. Therefore, it is not necessary to consider further arguments in support of ANR. We also observe Guardian Pipeline Co. is a party in a separate case before this court and has already submitted its briefs in that case for our consideration.