Mark E. SPANBAUER, Plaintiff-Respondent,

v.

STATE OF WISCONSIN DEPARTMENT OF TRANSPORTATION,
Defendant-Appellant.†

Court of Appeals

*No. 2008AP1165. Oral argument February 24, 2009.
—Decided May 27, 2009.*

2009 WI App 83

(Also reported in 769 N.W.2d 137.)

† Petition to review denied 9/24/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kathleen M. Batha*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *Kathleen M. Batha*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Charles P. Graupner* and *Susan M. Sager* of *Michael Best & Friedrich LLP*, Milwaukee. There was oral argument by *Charles P. Graupner*.

Before Brown, C.J., Anderson, P.J., and Neubauer, J.

¶ 1. ANDERSON, P.J. This is an eminent domain action. It involves the State of Wisconsin Department of Transportation's (DOT) 2007 acquisition of Mark E. Spanbauer's property for a planned highway project. The issue is, despite the trial court's discretionary role in regard to the admission of evidence, does Wisconsin's project influence rule create an exclusionary rule the court must apply when the sale of a comparable property—here, sold to an entity associated with Kwik Trip[1]—is within the footprint of a planned project, where the sale of the comparable property occurred

---

[1] Kwik Trip, Inc. owns Kwik Trip convenience/gas station stores. *See* Kwik Trip, Inc., http://www.kwiktrip.com/whoweare.asp (last visited Apr. 6, 2009).

after the project plans were known to the public or to the purchaser. The trial court answered no. The DOT requests remand for a new trial "at which all evidence of the Kwik Trip sale is excluded from the trial pursuant to a bright line 'project influence' exclusionary rule." Spanbauer counters that "the DOT is asking [this court] to ignore the statute[, WIS. STAT. § 32.09(5) (b),] and create a new rule of law from whole cloth." We affirm the trial court.

## Law

¶ 2. When property is taken through the power of eminent domain, the legislature has directed that the property owner is to receive "just compensation" for the taking. WIS. STAT. § 32.09 (2007–08).[2] Here, Spanbauer's property was taken in its entirety, so we begin by examining § 32.09(5), the "total taking" subsection of § 32.09. Section 32.09(5)(a) states: "In the case of a total taking the condemnor shall pay the fair market value of the property taken and shall be liable for the items in [WIS. STAT. §] 32.19 if shown to exist."[3] Section 32.09(5)(b), which codifies Wisconsin's project influence rule, states:

Any increase or decrease in the fair market value of real property prior to the date of evaluation caused by the public improvement for which such property is ac-

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[3] "Fair market value is 'the amount for which the property could be sold in the market on a sale by an owner willing, but not compelled, to sell, and to a purchaser willing and able, but not obliged, to buy.' " *Pinczkowski v. Milwaukee County*, 2005 WI 161, ¶ 18, 286 Wis. 2d 339, 706 N.W.2d 642 (citation omitted).

quired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, may not be taken into account in determining the just compensation for the property.

¶ 3. First, we note that Wis. Stat. § 32.09(5)(b) requires that just compensation will take into account the fair market value. *See id.* Both the DOT and Spanbauer's appraisers testified that their appraisals complied with this standard. Second, we have consistently held that when compensating condemnees in eminent domain proceedings, the "highest and best use" of the property should be considered in the valuation. In *Bembinster v. DOT*, 57 Wis. 2d 277, 203 N.W.2d 897 (1973), we explained:

> It is well established that market value in an eminent-domain proceeding is to be based not necessarily on the use to which the property was being put by its owner at the time of taking but rather on the basis of the highest and best use, present or prospective, for which it is adapted and to which it might in reason be applied.

*Id.* at 283 (citations omitted).

¶ 4. The trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See* Wis. Stat. § 904.03.

¶ 5. Whether the trial court properly exercised its discretion in admitting or excluding expert testimony is assessed under Wis. Stat. § 907.02. *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 13, 281 Wis. 2d 173,

696 N.W.2d 194. Expert testimony is admissible if the witness is qualified as an expert and has specialized knowledge that is relevant because it will assist the trier of fact in understanding the evidence or determining a fact at issue. *Id.*; § 907.02. The admissibility of expert evidence is left to the sound discretion of the trial court. *Arents*, 281 Wis. 2d 173, ¶ 13. However, any relevant conclusions which are supported by a qualified witness should be received unless there are other reasons for exclusion. *Id.* Expert testimony will be excluded only if the testimony is superfluous or a waste of time. *Id.*; *see also* WIS. STAT. § 904.03.

¶ 6. The admission or exclusion of evidence regarding fair market value in condemnation cases is left to the trial court's discretion. *Arents*, 281 Wis. 2d 173, ¶ 12. The trial court has broad discretion in making evidentiary rulings. *Id.* We will sustain the trial court's evidentiary rulings if the trial court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Id.* (citing *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698).

### Facts

¶ 7. Since 1985, Spanbauer owned an engine machining business located at 3050 Algoma Boulevard in the town of Oshkosh. In August 2007, the DOT, exercising its powers of eminent domain, took Spanbauer's property in its entirety for highway improvements. In compliance with the trial court's November 2007 scheduling order, Spanbauer provided the report of his expert appraiser, Thomas R. Swan.

¶ 8. Thereafter, the DOT hired John D. Rolling to provide its expert appraisal report. The two appraisals

247

differed by $120,000, with Spanbauer's appraiser valuing his property at $275,000, and the DOT's appraiser valuing it at $155,000. Spanbauer's appraiser used as one of his comparable sales a sale made to a Kwik Trip entity of a site located directly across the street from Spanbauer's property; the DOT's appraiser did not.

¶ 9. On Friday, March 7, 2008, two business days prior to the scheduled jury trial, the DOT filed a motion in limine requesting an order barring admission of the portions of Swan's testimony and report that related to the Kwik Trip sale. On the scheduled trial date, Tuesday, March 11, 2008, the court heard the motion before proceeding with the trial. The DOT argued in part:

> Kwik Trip bought this cabinet workshop because they knew the project was coming through . . . . The traffic count is going from 8,200 vehicles per day to over 20,000 vehicles per day on that route the next 10 or so years.
>
> So Kwik Trip knew that they were buying a specially benefitted property . . . . Mr. Swan is suggesting that [the future Kwik Trip site] is his best comparable sale. That is a property that was bought with knowledge of the project by Kwik Trip's own admission.
>
> [T]he design for the roundabout in this neighborhood was finalized in March, 2006. Kwik Trip bought in August, 2006 and they're using that Kwik Trip sale to value the subject in August, 2007 at a commercial price that is inconsistent with every pre-project zoning in the neighborhood.

¶ 10. Spanbauer responded, arguing that the DOT's untimely motion was highly prejudicial because it would require him to amend his expert report on the day of trial. On the merits, Spanbauer argued:

248

[T]he [project influence] rule precludes [] evidence regarding an increase or decrease in the fair market value based on a sale that's influenced by the project. In other words, it is the price that relates to the rule. If the purchaser paid an excessive price for this property because of the project, then that price can not be taken into account by the jury.

Now, this is simply a debate between the two experts. Mr. Swan has considered this rule and decided that it doesn't apply in this case, that this particular sale, even though the purchase was made with knowledge of the project, this sale is directly in line with other commercial land sales and, therefore, does not exhibit project influence. Indeed, if you take the [Kwik Trip] sale out, it doesn't have that much impact on his final conclusions of value.

Therefore, he has demonstrated that there is no project influence in this particular comparable. This is simply a debate between experts. The parties differ as to value . . . . It goes to the weight but it certainly does not permit the exclusion of this expert on the morning of trial.

Denying the DOT's motion, the trial court ruled:

The Court is going to find . . . it's a question of fact. I think that the jury can be properly instructed that they are not to take into consideration any increase or decrease in the value of the property prior to the date of evaluation. They can make that determination themselves and a proper instruction can be drafted for them to take into account any increase due to the knowledge of the project. There will be other comparables that will be in there as well that they can look at, but I think it's still a question of fact for the jury, so the motion to exclude will be denied.

The matter proceeded to trial to determine the fair market value of Spanbauer's property.

¶ 11. At trial, Swan testified that he concluded the fair market value of Spanbauer's property to be "at least $275,000." Swan stated that in doing his appraisal he began with a database of nearly fifty commercial land sales in Oshkosh, showing a value range of less than $1.00 to more than $10.00 per square foot. From that database, Swan selected five sales he considered most comparable on which to base his appraisal. Among these sales was a property purchased by an entity related to Kwik Trip and located on Algoma Street in the immediate vicinity of the Spanbauer property.

¶ 12. Swan testified that his selection of the Kwik Trip sale as a comparable sale was in compliance with Wisconsin's project influence rule. He concluded the Kwik Trip sale price was not project influenced for several reasons. He stated that he chose the Kwik Trip sale because it is a sale that is located near a freeway interchange; it is a sale price within the market range of sales prices in Oshkosh and the sale price is not "outside the realm of what would be paid typically for any site that's located on a freeway interchange." He noted that the Kwik Trip sale was not the highest valued sale in his range of comparables. The Kwik Trip site sold for $8.07 per square foot; another comparable property he included sold for $9.22 per square foot.

¶ 13. Swan also said that another consideration that factored into his decision to include the Kwik Trip sale was that there had been uncertainty associated with the Highway 41 project: between 2002 and 2005, the project had been shelved; currently, the planned project is not expected to be done until 2011 or 2012. Thus, Swan said he concluded that investors have been hesitant to purchase property in this location in part due to the uncertainty surrounding the project.

¶ 14. Swan further testified that if he eliminated consideration of the Kwik Trip sale in his analysis of the fair market value of Spanbauer's property, his valuation would be $255,000, $20,000 less than his calculation including the Kwik Trip sale. He testified that he did not make time adjustments for appreciation rates in his analysis because there was a formula problem that did not allow for it to be included in the final value payment. He concluded, however, that if he had (1) made the adjustments for appreciation—like the DOT appraiser did—and (2) eliminated the Kwik Trip sale from his comparables, his bottom-line valuation for Spanbauer's property would still be $275,000 because these two alterations would basically cancel each other out.

¶ 15. The DOT's appraiser, Rolling, testified that he spoke with a DOT lawyer in connection with doing the Spanbauer property appraisal. Rolling confirmed that the DOT lawyer told him: "[H]aving read the Swan appraisal [of Spanbauer's property,] I believe there might be project influence going on here." In doing his appraisal, Rolling testified that he did not use the Kwik Trip sale as a comparable sale because he "was quite sure that this was a project influenced sale that I'm barred from using under my understanding of the [federal rules] and under Chapter 32.05 of the Wisconsin Statutes." When asked about Swan's application of the project influence rule, Rolling opined:

> I simply cannot see how you can use [the Kwik Trip sale] and not call it project influenced. Here we have a purchase which takes place five months after the publication of clear and detailed land plans for the highway project which plans show a substantial benefit to the land involved here purchased by folks who are in the business of purchasing highway locations.

251

In his appraisal report, which was entered into evidence, Rolling explained his rejection of the Kwik Trip sale as a comparable:

> The parcel at 3092 Algoma, purchased by a regional gas station/convenience store [the Kwik Trip sale], will be just off the roundabout, ideally located for visibility and access. The sale on this parcel closed in August 2006—by which time the outlines of this new intersection had already been decided. In sum, the parcel at 3092 Algoma Boulevard [the Kwik Trip sale] gains substantial benefits from the road project and these benefits are reflected in the sales price posted in August 2006. I conclude that this sale is project-enhanced, so is not admissible as evidence of market value for the subject nor as a guide to the subject's highest and best use within the context of this appraisal.

¶ 16. Rolling testified that his appraisal report agreed with the DOT lawyer's assessment that project influence affected the Kwik Trip sale, but his opinion was an "independent opinion regardless" of any conversations he had prior to making his appraisal. Rolling concluded that the fair market value of Spanbauer's property was $155,000.

¶ 17. The jury heard extensive testimonies from both experts in which they each explained their appraisal process and reasoning. Both Swan and Rolling were examined at length about whether the use of the Kwik Trip sale comported with Wis. Stat. § 32.05, the project influence rule. Rolling took the position that the project influence rule barred him from using the Kwik Trip sale as a comparable because he concluded that the sale was influenced by the highway project. He stated that he therefore did not introduce the Kwik Trip sale into his report and did not do any analysis of the degree, if any, to which its sale price was excessive. Rolling

acknowledged that it was "[t]rue" that if Kwik Trip develops this property as a gas station/convenience store, it will have to buy additional property because the half-acre size of the site is too small to support a gas station/convenience store.

¶ 18. At the close of argument, the trial court incorporated the project influence rule into the jury instructions. Having heard both experts' reasoning for their conclusions, along with the other evidence, the jury determined that the fair market value of Spanbauer's property was $275,000, the amount testified to by Swan. The trial court entered judgment accordingly. The DOT filed a postverdict motion to set aside the verdict for a new trial. The trial court denied the motion. The DOT appeals the judgment of the trial court.

¶ 19. On appeal, the DOT argues that the testimony and evidence regarding the Kwik Trip sale should have been excluded because it was irrelevant, misleading, confusing and unduly prejudicial, and because it violates Wisconsin's project influence rule as codified in Wis. Stat. § 32.09(5)(b). The DOT asks this court to adopt a bright-line rule providing that where there exists evidence of comparable sales not impacted by a public improvement project, any sale alleged to be comparable that was purchased after the project plans were known, and which is located in whole or in part within the project footprint, must be excluded as a matter of law.

### Discussion

¶ 20. Upon review of the record and after hearing oral arguments on appeal, we decline to recognize the bright-line exclusionary rule requested by the DOT. It

was not an erroneous exercise of discretion to admit evidence of a comparable sale within the footprint of a planned project, when the facts were disputed as to whether there was project influence on that comparable sale, even though the sale occurred after the project plans were known.

¶ 21. Here, the trial court demonstrated on the record its sound exercise of discretion. After hearing arguments on the DOT's motion to exclude evidence, it made its ruling that "it's a question of fact." It determined that "the jury can be properly instructed that they are not to take into consideration any increase or decrease in the value of the property prior to the date of evaluation." It further determined that "[the jury] can make that determination themselves and a proper instruction can be drafted for them to take into account any increase due to the knowledge of the project." In its instructions to the jury, the court included Wisconsin's project influence rule with the instruction to abide by it.

¶ 22. At the motions after verdict hearing, the trial court again demonstrated its careful exercise of discretion:

> [A]s to this motion to set aside the verdict . . . the real controversy was tried and the Court doesn't disagree with the whole premise behind [WIS. STAT. §] 32.09(5)(b) . . . .
>
> This was a case in which you had experts both ways . . . .
>
> It was a dispute of fact . . . .
>
> . . . .
>
> [T]o say there was no probative value and that the prejudicial affect would outweigh the probative value,

254

to the Court, it was just the opposite. The jury got to hear it all and then make the determination for themselves as to whether or not there was any increase or decrease due to that road.

¶ 23. We are satisfied that the trial court examined the relevant facts, applied a proper legal standard and, using a demonstrated rational process, reached a reasonable conclusion. *See Arents*, 281 Wis. 2d 173, ¶ 12. The DOT fails to meet its heavy burden of demonstrating that the trial court abused its discretion. The trial court's evidentiary ruling to admit the Kwik Trip sale evidence is sound.

¶ 24. That said, we appreciate the DOT's concern that the taxpayers should not have to pay twice. They should not. As noted, the trial court instructed the jury that it was obligated to follow Wisconsin's project influence law. We presume that the jury follows the instructions given to it by the trial court. *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432, 436 (Ct. App. 1989); *see also Kain v. Bluemound E. Indus. Park, Inc.*, 2001 WI App. 230, ¶ 43, 248 Wis. 2d 172, 635 N.W.2d 640. We presume the jury followed Wisconsin's project influence rule in this case and there is before us no basis on which to presume otherwise.

¶ 25. The DOT nonetheless pleads with this court to recognize a bright-line rule in regard to comparable sales in an eminent domain situation. We agree with Spanbauer that this is not our role. Wisconsin's project influence statute, Wis. Stat. § 32.09(5)(b), contains nothing about comparables. It simply states that any increase or decrease in the fair market value of the subject property caused by the public improvement may not be taken into consideration in determining just compensation.

¶ 26. The DOT makes much of the undisputed evidence that the Kwik Trip entity purchased the site with knowledge of the highway project. Again, the DOT does not and cannot rely on legislative mandate for the assertion that knowledge of a highway project automatically means that the sale was project influenced. Wisconsin law does not require the exclusion of sales occurring with knowledge of the project. To the contrary, Wis. Stat. § 32.09(1m), which sets forth the rules for determining just compensation based on a comparable sales approach, states otherwise:

> A sale or contract is comparable within the meaning of this subsection if it was made within a reasonable time before or after the date of evaluation and the property is sufficiently similar in the relevant market, with respect to situation, usability, improvements and other characteristics, to warrant a reasonable belief that it is comparable to the property being valued.

Thus, since § 32.09(1m) specifically states that a sale *is* comparable if it was made within a reasonable time *before or after the date of evaluation,* arbitrarily precluding any sale made with the public or the buyer's knowledge of a project is a violation of our rules of statutory interpretation. *See Maxey v. Redevelopment Auth. of City of Racine,* 120 Wis. 2d 13, 25, 353 N.W.2d 812 (Ct. App. 1984) (any inferential repeal or substantial broadening of a statute is better left to the legislature).

¶ 27. Our purpose is to "faithfully give effect to the laws enacted by the legislature." *Warehouse II, LLC v. DOT,* 2006 WI 62, ¶ 14, 291 Wis. 2d 80, 715 N.W.2d 213 (citation omitted). We defer to the policy choices of the legislature and we assume that the legislature's intent is expressed in the statutory language it chose. *Id.* Wisconsin Stat. § 32.09 expressly recognizes posttak-

ing sales as comparables, thus we reject the DOT's urging to replace the trial court's discretion with a new exclusionary rule not legislatively created.

¶ 28. Accordingly, under the laws of Wisconsin, when there is factual dispute regarding whether project influence existed, it was the proper exercise of discretion to admit the evidence of comparable sales for the jury to consider, and pursuant to a jury instruction to follow the project influence rule.

¶ 29. Here, the trial court was faced with competing expert appraisal evidence which stated on the one hand that the Kwik Trip sale was project influenced and on the other that it was not. The court allowed both parties to fairly value the condemned property and allowed each side to present its evidence; it then instructed the jury on Wisconsin's project influence rule and on the duty to follow this law.

## Conclusion

¶ 30. We decline the DOT's invitation to ride roughshod over the trial court's discretionary realm. Admission of Spanbauer's disputed factual evidence as to whether there was project influence regarding the Kwik Trip sale is an evidentiary consideration which is left to the sound discretion of the trial court. Wisconsin's project influence rule, as codified in WIS. STAT. § 32.09(5)(b), does not create, and we will not adopt, a bright-line rule as requested by the DOT mandating that

> where there exists evidence of comparable sales not impacted by a public improvement project, any sale alleged to be comparable that was purchased after the project plans were known, and which is located in whole or in part within the project footprint must be excluded as a matter of law.

257

Condemnation is a creature of the legislature and it is for the legislature to adopt an exclusionary rule such as this. We sustain the trial court's discretionary decision.

*By the Court.*—Judgment affirmed.