In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3281

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GARY DEBENEDETTO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cr-00199 — **Rubén Castillo**, *Chief Judge.*

SUBMITTED NOVEMBER 27, 2013 — DECIDED MARCH 3, 2014

Before FLAUM, RIPPLE, and HAMILTON, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Gary Debenedetto has been charged in a five-count indictment with knowingly transmitting through interstate commerce threats to injure another person, in violation of 18 U.S.C. § 875(c). Following his arrest, the district court ordered a mental competency evaluation and made an initial finding that Mr. Debenedetto suffers from a mental disease or defect that renders him mentally incompetent to the extent that he is unable to understand the nature

and consequences of the proceedings against him or to assist in his defense. The court ordered him to be placed in a facility pursuant to 18 U.S.C. § 4241(d) for further evaluation, and Mr. Debenedetto was sent to the Federal Medical Facility in Butner, North Carolina ("Butner").

The evaluating psychiatrist at Butner conducted additional examinations, which led him to conclude that Mr. Debenedetto would require involuntary treatment with psychotropic medications to restore his competency for trial. At a follow-up hearing, the district court considered the psychiatrist's report and determined that Mr. Debenedetto should be committed for treatment, including involuntary medication, as is necessary to attain the capacity to permit the criminal proceedings to go forward. *See* 18 U.S.C. § 4241(d)(2)(A).

Mr. Debenedetto filed a pro se appeal from the district court's commitment order, but after the Government notified the court of its intent to execute promptly the district court's order absent an order from this court, his attorney filed both a motion to stay the order and a motion to withdraw as counsel from the appeal. We ordered a temporary stay of the order and directed the Government to respond to the stay motion. After reviewing the submissions of the parties and the transcript of the district court hearing, we hold that the hearing and subsequent written findings of the district court do not constitute adequate compliance with the requirements set forth in *Sell v. United States*, 539 U.S. 166 (2003).[1] We therefore must

---

[1] Interlocutory review is appropriate to consider whether a defendant has a legal right to avoid forced medication, and we have jurisdiction to review

(continued…)

vacate the court's commitment order and remand for further proceedings consistent with this opinion.

**I**

Mr. Debenedetto was arrested on April 11, 2012, on charges that he transmitted threatening communications to various individuals, in violation of 18 U.S.C. § 875(c). While Mr. Debenedetto was in custody pending trial, the district court ordered, on its own initiative, a mental competency evaluation. Pursuant to this order, the district court received the results of a forensic examination performed by the Metropolitan Correctional Center in Chicago, Illinois ("MCC"), and later conducted a hearing at which the evaluating forensic psychologist testified. Following the hearing, the court determined that Mr. Debenedetto suffered from a mental disease or defect that rendered him mentally incompetent to stand trial. The district court therefore ordered that he be placed in the custody of the Attorney General for additional mental competency evaluations.

Four months later, the court received and reviewed the result of a second examination performed at Butner. According to the district court, "Dr. Robert Lucking, the evaluating psychiatrist, opined that defendant need[ed] to be involuntarily treated with psychotropic medications in order to restore

---

[1] (...continued)
the district court's order under the collateral order doctrine. *Sell v. United States*, 539 U.S. 166, 176-77 (2003); *United States v. Chavez*, 734 F.3d 1247, 1249 (10th Cir. 2013).

his competency to proceed to trial."[2] On October 8, 2013, therefore, the Court held a hearing regarding the need to medicate Mr. Debenedetto without his consent.

At the hearing, Mr. Debenedetto's attorney initially objected to the intended course of medication. He stated that he did not believe that "the first prong of *Sell*," relating to the importance of the Government's interest, was met.[3] He went on to explain that he believed that Mr. Debenedetto's guideline range for the crimes charged would be ten to sixteen months and that he already had been incarcerated for sixteen months. Counsel for Mr. Debenedetto also raised concerns regarding the effectiveness of the drugs that would be administered; he specifically noted that "30 percent of these involuntary medications don't always work."[4]

In response, counsel for the Government took issue with defense counsel's estimated guideline range, which she calculated to be between thirty-seven and forty-six months. Nevertheless, the Government's counsel acknowledged that "[t]here is some uncertainty as [to] how Mr. Debenedetto will take the medication and whether he will be restored [to competency] within six months," but noted that, "at least in the opinion of the medical professionals at Butner, they do believe

---

[2]   R.63 at 2.

[3]   R.69 at 3.

[4]   *Id.* at 4.

there's a substantial likelihood that Mr. Debenedetto can be restored within that time."[5]

The district court never directly addressed the parties' arguments because the court believed that defense counsel was proposing that Mr. Debenedetto be involuntarily committed. The court suggested that defense counsel file a written motion to which the Government could respond. Defense counsel asked for a short adjournment to confer with Mr. Debenedetto. When proceedings resumed, counsel represented that Mr. Debenedetto had agreed to go back to Butner and, "if they feel involuntary medication is appropriate, that should be done, but they should also review or consider less intrusive measures other than that if appropriate or if he would agree. And if not, they can involuntarily medicate. He's agreed to that."[6]

Mr. Debenedetto, however, then requested the opportunity to speak. He stated:

> I have to, you know, ask you, okay, that I have a brother in California, okay, who had taken some psychotropic neuroleptics. Okay. He went into seizures, all right? They gave me an advanced, second-generation form of psychotropics at MCC on July 11th, one pill. It was called Geodon. It was the

---

[5] *Id.* at 5-6.

[6] *Id.* at 7.

> most advanced, side-effect-free, okay? I fell down on
> the floor. I was in seizures for eight hours.[7]

The court responded, "[s]o you don't want to do that again," and Mr. Debenedetto replied, "[e]xactly."[8]

Mr. Debenedetto also made statements that appear to indicate his belief that medication was not necessary. He referenced classes he had been taking at Butner that "teach competency," reported that he had been in law school and explained that he was able to function in the open population at Butner without medication.[9]

The hearing concluded with the court stating that it would "enter an appropriate order. I'm going to ask the government to submit it. You can look at it, … and, if necessary, the psychotropic medications will be administered, but they will be administered in a way that is not prejudicial to Mr. Debenedetto's physical health."[10] The district court subsequently entered the following finding: "Based on the seriousness of the charged conduct in the indictment, the reports, and the referenced studies, the facts in the instant matter satisfy the requirements for imposition of involuntary treatment as outlined in *Sell v. United States*, 539 U.S. 166,

---

[7]  *Id.* at 8.

[8]  *Id.*

[9]  *Id.*

[10]  *Id.* at 9.

180-81 (2003)[] … ."[11] After reiterating the requirements of *Sell*, the court then ordered, in relevant part:

> 1. The recommended medication be involuntarily administered according to the procedures recommended in the Forensic Evaluation. However, prior to the involuntary administration of medication, less intrusive measures should be considered and taken if deemed appropriate and available.

> 2. Any recommended medication being involuntarily administered should not in any way endanger the health of defendant.[12]

Mr. Debenedetto filed a pro se appeal from the district court's commitment order, but after the Government notified this court of its intent to execute promptly the order absent a stay, his attorney filed a motion to stay as well as a motion to withdraw as counsel from the appeal. We entered a temporary stay of the order and now address the merits of the district court's commitment order.

## II

The decision to medicate involuntarily a defendant must balance the interests of the defendant with the interests of the Government, and these interests differ depending on the purpose of the medication. For instance, the Government has

---

[11]  R.63 at 3.

[12]  *Id.* at 4.

a strong interest in using involuntary medication to control a defendant who is dangerous to himself or others in order to ensure prison safety and security. *Washington v. Harper*, 494 U.S. 210, 223 (1990). The Due Process Clause therefore permits the Government to medicate involuntarily an inmate with antipsychotic drugs against his will if he is dangerous and the treatment is in his best interest. *Id*. at 227.

When the Government seeks to medicate involuntarily a defendant solely for the purpose of rendering the defendant competent to stand trial, however, it must meet a higher standard to counterbalance the defendant's right to avoid involuntary medication. *Sell*, 539 U.S. at 181-82. In *Sell*, the Court set forth four findings that the district court must make before ordering the involuntary administration of psychotropic medication for the purpose of rendering a defendant competent to stand trial. First, the district court must determine "that *important* governmental interests are at stake" based on the facts of the individual case. *Id.* Second, the court must find that the medication "is substantially likely to render the defendant competent to stand trial" and "is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." *Id*. at 181. "Third, the court must conclude that involuntary medication is *necessary* to further those interests" and "that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Id*. "Fourth, … the court must conclude that administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition." *Id*. The Government must establish each of these conditions by clear and convincing evidence. *United*

*States v. Chatmon*, 718 F.3d 369, 374 (4th Cir. 2013); *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010) (collecting cases). We review the district court's conclusions of law de novo and its findings of fact for clear error. *United States v. Lyons*, 733 F.3d 777, 782 (7th Cir. 2013); *United States v. Gutierrez*, 704 F.3d 442, 448 (5th Cir. 2013). "Without a clear statement of the court's rationale … , we cannot evaluate whether [the court's] decision was proper or constituted clear error." *United States v. Hawk*, 434 F.3d 959, 962 (7th Cir. 2006).

## A. Importance of Governmental Interest

We address first whether the Government established an important interest, which, the Court has stated, includes "bringing to trial an individual accused of a serious crime." *Sell*, 539 U.S. at 180. Most courts to have addressed the issue have held that the central consideration when deciding whether a particular crime is "serious" is the penalty authorized by statute for the particular offense. *See, e.g., Chatmon*, 718 F.3d at 374 (noting that a crime with a statutory mandatory minimum of ten years is serious); *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) (same); *United States v. Palmer*, 507 F.3d 300, 303-04 (5th Cir. 2007) (holding that a crime with a maximum of ten years is serious even if defendant faced a guidelines range of only fifteen to twenty-one months).

In *Sell*, the Court also noted that special circumstances may exist which would lessen the importance of the governmental interest at stake. These include the defendant's lengthy confinement in an institution for the mentally ill, the potential for future confinement if the defendant regains competency

and the amount of time a defendant already has been confined while the charges have been pending. *Sell*, 539 U.S. at 180. In making the determination whether such special circumstances exist, the district court must consider the facts of the individual case. *Id.*; *United States v. Grigsby*, 712 F.3d 964, 969 (6th Cir. 2013); *United States v. White*, 620 F.3d 401, 411 (4th Cir. 2010). In this respect, although the importance of the Government's interest is established, as a general matter, by the maximum statutory penalty, after the Supreme Court's decisions in *Rita v. United States*, 551 U.S. 338 (2007), and *United States v. Booker*, 543 U.S. 220 (2005), it is appropriate at this point in its analysis for the district court to undertake, with the assistance of counsel, an estimate of the defendant's probable guideline range. *See Grigsby*, 712 F.3d at 973.

The district court's order does not reflect that it considered either the length of Mr. Debenedetto's sentence, by reference to the statutory maximum and to the Guidelines, or Mr. Debenedetto's current or future confinement in concluding that the Government had established by clear and convincing evidence that it had an important interest in bringing Mr. Debenedetto to trial. Counsel for Mr. Debenedetto initially argued that this element of *Sell* was not satisfied because his client already had been in custody for the amount of time he likely would serve if convicted, and, therefore, there could be no important governmental interest at stake in forcibly medicating him to allow him to stand trial. Although the parties put forward differing views of the length of sentence Mr. Debenedetto might serve, the court did not ask counsel to elaborate on how they reached their calculations, and the issue was not addressed further. Moreover, although the subject of

involuntary confinement was broached by the court, and the likelihood could weigh against the importance of the Government's interest here, the district court's order similarly was silent on how this special circumstance factored into its analysis.

## B. Effectiveness of the Medication

We turn then to the second of *Sell*'s requirements: that the medication "is substantially likely to render the defendant competent to stand trial" and "is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel" in putting forth a defense at trial. 539 U.S. at 181. At the second hearing, defense counsel specifically observed, apparently in reference to the report from the Butner psychiatrist, that the psychotropic drugs were ineffective in thirty percent of the cases. The Government countered that the report suggested that there was a substantial likelihood that Mr. Debenedetto could be restored to trial-level competency within six months' time. Even if we had the benefit of the report, however, and could conclude that the Government had established, by clear and convincing evidence, that Mr. Debenedetto could be rendered competent with the involuntary administration of psychotropic drugs, there is no evidence in the record as to the side effects of those drugs and their potential negative impact on Mr. Debenedetto's ability to assist with his defense.

## C.  Medical Necessity and Less Intrusive Means

We must conclude that the record similarly is inadequate to establish the third *Sell* requirement–that the medication is necessary to further the Government's important interests and "that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Id.* Before a district court can conclude that involuntary medication is necessary, it must consider whether less intrusive means are possible. *Chatmon*, 718 F.3d at 376 (reversing medication order where the district court had not addressed the defendant's arguments regarding less intrusive means "and essentially provided 'no rationale' in support of its ruling"). Mr. Debenedetto's counsel conditioned his client's willingness to return to Butner on the ground that the professionals there "review or consider less intrusive measures." R.69 at 7. Indeed, the district court accepted this qualification and incorporated it into its order. *See* R.63 at 4. In doing so, the district court necessarily failed to make, as it must, the required finding that alternative, less intrusive treatments would be unlikely to achieve substantially the same results. Here, the district court impermissibly delegated that responsibility.

## D.  Best Medical Interest of the Defendant

We turn now to the fourth *Sell* requirement: that "administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition." 539 U.S. at 181. Our review of this aspect of *Sell* is hindered by the parties' failure to include in the record the report of Dr. Lucking on which the court, apparently, heavily relied. We

must conclude that the Government did not meet its burden with respect to this element. The only pertinent information in the record is Mr. Debenedetto's statement to the district court, in which he details his previous violent and serious reaction to antipsychotic drugs.[13]

In sum, the record does not support the conclusion that the Government met its burden of establishing each of *Sell*'s requirements by clear and convincing evidence. We therefore must vacate the district court's commitment order. On remand, the district court must consider and make explicit findings concerning:

1. The importance of the Government's interest as evidenced by the seriousness of Mr. Debenedetto's crime and any other special circumstances that might lessen either the seriousness of his crime or the importance of the Government's stated interest;

2. The likelihood that the identified proposed course of treatment will render Mr. Debenedetto, given his

---

[13] To the extent that the district court believed that it was unnecessary to make the required *Sell* findings because Mr. Debenedetto voluntarily agreed to the medication, we do not believe that such a conclusion is supported by the record. Mr. Debenedetto's statements to the court reveal a legitimate fear of serious side effects based on past experience. He made it very clear that he did not want to experience those side effects again. His statements also reveal a belief that antipsychotic drugs may not be necessary to improve his competency. These comments evince a clear interest in exploring less invasive means and strongly point to the conclusion that he did not unqualifiedly consent to the administration of antipsychotic drugs. Because Mr. Debenedetto did not consent to the administration of those drugs, we believe the requirements of *Sell* must be satisfied.

specific diagnosis, competent to stand trial *and* the likelihood that it will not have side effects that will interfere significantly with his defense;

3.  The *necessity* of the proposed treatment to render Mr. Debenedetto competent for trial and the likelihood that less intrusive alternatives could not achieve substantially the same results; and

4.  The appropriateness of the proposed course of treatment for Mr. Debenedetto, i.e., that it is in his best medical interest. As with the findings for the second factor, these findings should reflect a recognition of Mr. Debenedetto's diagnosis and his personal medical history.

As our colleagues in the Sixth Circuit have observed: "Each involuntary medication case presents a court with the challenging task of balancing the defendant's fundamental constitutional right to liberty against the government's important interest in prosecution." *Grigsby*, 712 F.3d at 976. This type of detailed, fact-intensive inquiry is therefore "necessary to determine where to strike that balance." *Id.*

**III**

A final matter pending in the appeal is the motion to withdraw as counsel filed by the attorney appointed to represent Mr. Debenedetto in the district court. Counsel represents, without elaboration, that he feels he has a conflict representing Mr. Debenedetto on this issue and does not feel it would be in the best interest of his client for him to continue

to represent him before this court. This appeal is part of Mr. Debenedetto's criminal proceedings, and he is entitled to representation by counsel. *See* 18 U.S.C. § 3006A(c). An order authorizing involuntary medication of an incompetent defendant conclusively resolves the legal question of the defendant's right to refuse treatment and is a legal question of constitutional significance separate from the merits of the underlying criminal action. *Sell*, 539 U.S. at 176-77. Because we are remanding the case to the district court summarily for further proceedings, however, there is nothing further for counsel to do in this court. Counsel's motion to withdraw relates only to proceedings before this court; accordingly, counsel will continue to represent Mr. Debenedetto in the district court absent a motion filed with that court.

## Conclusion

For the reasons set forth in the preceding opinion, we vacate the October 10, 2013 commitment order of the district court and remand for further proceedings consistent with this opinion. Given that disposition, we also deny defense counsel's motion to withdraw from the appeal as moot.

VACATED and REMANDED;
MOTION TO WITHDRAW DENIED