COURT OF APPEALS
DECISION
DATED AND FILED

March 16, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP819-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CM939

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

WILSON P. ANDERSON,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: DAVID A. FEISS, Judge. *Affirmed*.

¶1 BRASH, P.J.[1] Wilson P. Anderson appeals an order of the trial court for his commitment to a mental health institution due to his incompetency, which included authorization for the involuntary administration of medication.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Anderson argues that there was insufficient evidence to support the order for involuntary medication. We disagree, and therefore affirm.

## BACKGROUND

¶2      In March 2020, Anderson was charged with misdemeanor battery and disorderly conduct after he attacked S.M.G. while she was walking down Plankinton Avenue in Milwaukee. S.M.G. told police that Anderson, who was a stranger to her, hit her in the head and then began to "yell and scream abusively and profanely" at her and other pedestrians in the area. S.M.G. stated that the attack was "total[ly] random and unprovoked[.]"

¶3      A competency evaluation of Anderson was ordered by the trial court the day after his arrest. The examination was conducted by Dr. Deborah L. Collins, a board-certified forensic psychologist. The exam had to be conducted through the cell door due to Anderson's "level of agitation." In her report to the court, Dr. Collins stated that although Anderson "made efforts to respond" to her questions, his responses were often "slurred, mumbled, and/or otherwise incoherent." He also would abruptly start shouting nonsensical phrases at Dr. Collins during the interview.

¶4      Dr. Collins did not believe that Anderson understood the reason for the interview. After making several attempts at "reasonably sustained rational, reciprocal dialogue"—all of which failed—Dr. Collins terminated the interview.

¶5      Additionally, for purposes of preparing her report, Dr. Collins reviewed the records from the Criminal Justice Facility (CJF), where Anderson was held after his arrest, and where she had conducted her examination of him. Due to concerns relating to his mental health, Anderson was housed in the Special

2

Needs Unit of the CJF. The CJF records indicated that Anderson had been acting in a "strange manner" and had been seen "mumbling incoherently." He was also observed repeatedly hitting himself, as well as "starting straight ahead."

¶6      Dr. Collins also reviewed Anderson's records from the Milwaukee County Behavioral Health Division (BHD). Those records showed that Anderson had over thirty-five "episodes of care" with various agencies within BHD, beginning in 2011, including at least five admissions to inpatient facilities. As a result of these episodes, he had been diagnosed with schizoaffective disorder. However, he was not taking any medication for that disorder at the time of his arrest.

¶7      Based on all of this information, Dr. Collins agreed with the diagnosis of schizoaffective disorder. Dr. Collins further opined that Anderson was not competent to proceed and participate in the court proceedings relating to the charges against him. However, Dr. Collins noted the "treatable nature" of this condition, and stated that Anderson was likely to become competent with the proper treatment, including psychotropic medications, which could be provided at a mental health facility. Dr. Collins subsequently filed an addendum to her report, noting that Anderson was not competent to make treatment decisions for himself, including decisions relating to medications.

¶8      A competency hearing was conducted in April 2020; Anderson refused to appear.[2] Dr. Collins testified as to the opinions she had expressed in her

---

[2] The trial court noted on the record that deputies had advised the court that Anderson "refus[ed] to cooperate and "refus[ed] to come to court." The court therefore found that Anderson had forfeited his right to be present at the hearing.

report. The trial court agreed with Dr. Collins' assessment that Anderson was not competent to proceed given the evidence of his "incredibly unstable mental condition" at that time, due to his being "wholly unmedicated[.]" The court also accepted her opinion that the involuntary administration of medication to Anderson while he was committed was "substantially likely to render [Anderson] competent to stand trial" within the timeframe contemplated in WIS. STAT. § 971.14(5)(a)1.[3] Furthermore, the court found that the involuntary administration of medication was "medically appropriate" and would be in Anderson's best interest.

¶9 Additionally, the court found that ordering involuntary medication for Anderson would "significantly further the government's interest" in prosecuting Anderson for the charges against him, noting the seriousness of the charges despite the fact that they were misdemeanors. Therefore, the court ordered Anderson's commitment to a mental health facility with the involuntary administration of medication. This appeal follows.

## DISCUSSION

¶10 "No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

---

[3] At the competency hearing, Anderson objected to Dr. Collins' testimony relating to involuntary medication, arguing that Dr. Collins is not a psychiatrist and thus not permitted to prescribe medication she was suggesting; therefore, Anderson argued that Dr. Collins was not qualified to testify as an expert on this issue. However, the trial court found that based on Dr. Collins' twenty years of experience in conducting forensic competency evaluations, which included "significant" experience with the medications available to treat psychotropic conditions, she was qualified to provide an opinion regarding the effect of such medication.

WIS. STAT. § 971.13(1). If there is "reason to doubt a defendant's competency to proceed," the trial court—upon finding that there is probable cause that the defendant committed the offenses charged—shall order an examination of the defendant, to be followed by a written report of the exam that is submitted to the court. WIS. STAT. § 971.14(1r)-(3). A hearing must then be held for the court to make a competency determination. Sec. 971.14(4).

¶11 "A competency determination is functionally a factual finding." *State v. Smith*, 2016 WI 23, ¶26, 367 Wis. 2d 483, 878 N.W.2d 135. Therefore, our review of the trial court's competency determination is under the clearly erroneous standard of review "that is particularized to competency findings." *Id.* Put another way, our review is "limited to whether that finding is totally unsupported by facts in the record and, therefore, is clearly erroneous." *Id.*, ¶29.

¶12 In this case, the competency proceedings resulted in the trial court's finding that Anderson was incompetent but likely to become competent "if provided with appropriate treatment" upon being committed to a mental health facility. *See* WIS. STAT. § 971.14(5)(a)1. Furthermore, the trial court ordered the involuntary administration of medication to Anderson while he was committed. *See* § 971.14(4)(b).

¶13 Because "individuals have 'a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs'" under the Due Process Clause, "[o]nly an essential or overriding state interest can overcome this constitutionally-protected liberty interest." *State v. Fitzgerald*, 2019 WI 69, ¶13, 387 Wis. 2d 384, 929 N.W.2d 165 (citations and internal quotation marks omitted). To ensure this right, the United States Supreme Court in *Sell v. United States*, 539 U.S. 166 (2003) established a four-factor test to determine whether the

involuntary administration of medication is "constitutionally appropriate." *Fitzgerald*, 387 Wis. 2d 384, ¶13. These factors require findings by the trial court that: (1) important government interests are at stake; (2) involuntary medication will significantly further those interests; (3) involuntary medication is necessary to further those interests; and (4) the administration of the medication is medically appropriate, that is, that it is in "the patient's best medical interest in light of his medical condition." *Sell*, 539 U.S. at 181.

¶14 The trial court's findings at the competency hearing reflect its consideration and application of the *Sell* factors to the facts of this case. However, before we review those findings, we address the State's argument that it is unnecessary to reach an analysis of the *Sell* factors because, under WIS. STAT. § 971.14(2)(f), medication may be involuntarily administered if "the medication or treatment is necessary to prevent physical harm to the defendant or others." In *Fitzgerald*, currently the only case in Wisconsin where the *Sell* factors were applied, a concurring opinion pointed out that it is not necessary to "employ the *Sell* factors" if the trial court orders involuntary medication based on a finding that the defendant is "dangerous to himself or others," pursuant to § 971.14(2)(f). *See Fitzgerald*, 387 Wis. 2d 384, ¶43 (Roggensack, C.J. and Ziegler, J., concurring). This distinction, however, is not discussed in the majority opinion. *See id.*

¶15 Furthermore, in making its findings in this case, the trial court— while noting the seriousness of the battery charge against Anderson, as well as the behaviors he had exhibited at the CJF, which included hitting himself—made no specific finding that involuntary medication was necessary to prevent Anderson from causing physical harm to himself and others. In other words, the court made no indication that it was ordering the involuntary administration of medication pursuant to WIS. STAT. § 971.14(2)(f).

¶16 The State further contends that this case aligns more directly with *Washington v. Harper*, 494 U.S. 210 (1990), where the Court determined that a judicial hearing is not required before the State "may treat a mentally ill prisoner with antipsychotic drugs against his will," as long as there are "essential procedural protections" in place that are in accord with due process requirements. *See id.* at 213, 236.

¶17 Similar to Anderson, the defendant in *Harper* was diagnosed with schizophrenia, *see id.* at 219, and involuntary medication was sought after a violent incident—Harper had attacked two nurses in a Seattle hospital, *see id.* at 214. We do note a distinguishing factor, however: Harper had already been convicted and, as the attacks on the nurses had occurred while he was on parole— which was subsequently revoked—he was thus incarcerated at the time this treatment was being sought. *See id.* at 213-14; *see also Winnebago Cnty v. C.S.*, 2020 WI 33, ¶30, 391 Wis. 2d 35, 940 N.W.2d 875 (where the court distinguished *Harper* from *Sell* because *Harper* discussed "involuntary medication of an inmate for a 'different purpose' than competence to stand trial"); *United States v. Debenedetto*, 757 F.3d 547, 552 (7th Cir. 2014) ("When the Government seeks to medicate involuntarily a defendant solely for the purpose of rendering the defendant competent to stand trial … it must meet a higher standard to counterbalance the defendant's right to avoid involuntary medication" than when involuntary medication is being sought for an inmate because he is dangerous).

¶18 We therefore believe it prudent to review the trial court's analysis based on the *Sell* factors. The standard for appellate review of the application of the *Sell* factors has not been previously established. However, because Anderson's right of due process is at issue, we perceive this to be a question of constitutional fact, the review of which presents a mixed question of law and fact.

*See State v. Martwick*, 2000 WI 5, ¶16, 231 Wis. 2d 801, 604 N.W.2d 552. Thus, the trial court's factual findings relating to competency, as noted above, will not be reversed unless they are clearly erroneous. *See Smith*, 367 Wis. 2d 483, ¶29; *see also State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. However, we will review *de novo* the application of the constitutional principles encompassed by the *Sell* factors to those facts. *See Eason*, 245 Wis. 2d 206, ¶9.

¶19 With regard to the first *Sell* factor—establishing that an important government interest is at stake—the Court explained

> The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is *a serious crime against the person or a serious crime against property*. In both instances the Government seeks to protect through application of the criminal law the basic human need for security.

*Id.*, 539 U.S. at 180 (emphasis added). "Serious crime," however, is not specifically defined in *Sell*, nor was it defined in *Fitzgerald*, for purposes of applying the *Sell* factors.

¶20 In this case, the trial court found that "a battery committed against a random individual, or frankly any individual, but in particular a random individual, is a serious crime against a person[.]" Furthermore, despite the fact that the battery charge against Anderson was a misdemeanor, the court found that being able to prosecute him for this charge involved "an important governmental interest at stake[.]"

¶21 Anderson asserts that courts in other jurisdictions have "focused on" the maximum statutory penalty for the offense charged as a "starting point." Here, the misdemeanor battery charge—which the trial court observed was the more serious offense—carries a nine-month maximum sentence. *See* WIS. STAT.

8

§ 939.51(3)(a). Anderson argues that "[r]elative to other crimes against people and property classified as felonies and punishable by longer periods of imprisonment," the fact that the punishment for misdemeanor battery is only nine months indicates that our "legislature has determined that [it] is not a serious crime."

¶22 The State, however, counters with several federal cases which delineated that a crime for which the punishment is over six months is considered a serious crime. *See **Baldwin v. New York***, 399 U.S. 66, 70-71 (1970) (holding that crimes with a punishment of over six months are "serious" for purposes of applying the right to a jury trial under the Sixth Amendment); ***United States v. Palmer***, 507 F.3d 300, 304 (5th Cir. 2007) (where while discussing the application of the first *Sell* factor, the Court observed that numerous courts have "held that crimes authorizing punishments of over six months are 'serious'"). In fact, in ***Baldwin*** the Court noted that while it "may readily be admitted … that a felony conviction is more serious than a misdemeanor conviction," there are still "some misdemeanors [that] are also 'serious' offenses." ***Id.***, 399 U.S. at 70.

¶23 We conclude, as the trial court did, that the battery charge against Anderson is such a serious crime. In addition to having a punishment in excess of six months, we agree with the trial court's assessment that the nature of the battery committed against S.M.G. was serious.

¶24 Also with regard to the first *Sell* factor, Anderson argues that the trial court made only "limited findings" relating to whether there were any "[s]pecial circumstances [that] may lessen the importance" of the State's interest as mandated by *Sell*. *See id.*, 539 U.S. at 180. Special circumstances include the potential for future confinement depending on whether Anderson does or does not

9

regain competency, and the amount of time that he has already been confined. *See id.*

¶25     The record indicates that the trial court did consider these special circumstances. The court indicated the maximum time for commitment under the statute—the lesser of "a period not to exceed 12 months, or the maximum sentence specified for the most serious offense" with which Anderson was charged. *See* WIS. STAT. § 971.14(5)(a)1. The court noted that the misdemeanor battery charge carried a maximum penalty of nine months, and that Anderson would get a credit for the number of days he spent incarcerated prior to his commitment.

¶26     Furthermore, the trial court found that Anderson was likely to regain competence during the statutory time frame that he could be committed, indicating that it did not place great import on the special circumstance relating to the potential for future confinement. Therefore, we conclude that the trial court properly considered sufficient facts in making its finding that the first *Sell* factor was satisfied.

¶27     Anderson next argues that the State failed to establish the second *Sell* factor—that involuntary medication will significantly further the State's interests—as well as the fourth factor—that the administration of the medication is medically appropriate and in Anderson's "best medical interest[.]" *Id.*, 539 U.S. at 181. Anderson's argument regarding both of these factors focuses primarily on the fact that Dr. Collins is a psychologist—as opposed to a psychiatrist—and therefore she cannot prescribe the medication she indicated would help Anderson's condition. As previously noted, at the competency hearing, Anderson's counsel objected to Dr. Collins being accepted as an expert on the

10

issue of whether the involuntary medication order was warranted based on this professional distinction.

¶28    The trial court rejected this argument and found that Dr. Collins could testify as an expert with regard to both Anderson's competency as well as the involuntary medication issue, based on her education, training, and experience. The admissibility of expert evidence is "left to the sound discretion of the trial court." *Spanbauer v. DOT*, 2009 WI App 83, ¶5, 320 Wis. 2d 242, 769 N.W.2d 137.    When reviewing the admission or exclusion of evidence of an expert witness, appellate courts first determine whether the trial court applied the proper legal standard pursuant to WIS. STAT. § 907.02(1).  *Seifert v. Balink*, 2017 WI 2, ¶89, 372 Wis. 2d 525, 888 N.W.2d 816.  This is a determination that we make independently, but benefitting from the trial court's analysis.  *See id.*

¶29    Once that is established, we then review whether the trial court properly exercised its discretion "in determining which factors should be considered in assessing reliability, and in applying the reliability standard" to decide whether to admit or exclude the expert's evidence.  *See id.*, ¶90 (footnote omitted).  This court will uphold such a discretionary decision if the trial court "examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion using a demonstrated rational process."  *State v. Mayo*, 2007 WI 78, ¶31, 301 Wis. 2d 642, 734 N.W.2d 115.

¶30    To establish the reliability of expert testimony that is based on experience, "'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *Seifert*, 372 Wis. 2d 525, ¶73 (citation omitted).  The trial court then engages in its "gatekeeping function" to

11

determine whether the expert has sufficient experience to be deemed reliable. *See id.*, ¶74.

¶31     The trial court's assessment of the reliability of Dr. Collins' expert testimony was based on her twenty years of experience as a forensic psychologist conducting competency evaluations, which included a "significant amount of experience in the drugs that are available to treat psychotropic conditions such as the schizophrenic disorder that Mr. Anderson suffers from" and their ability to restore an individual suffering from that disorder to competence. In making this determination, the court applied the correct legal standard to the facts as set forth in the record, and therefore did not erroneously exercise its discretion in allowing Dr. Collins' testimony. *See Mayo*, 301 Wis. 2d 642, ¶31.

¶32     Through Dr. Collins' testimony, it was established that schizoaffective disorder is a "major mental illness," but that it is "essentially and fundamentally a treatable condition" with psychotropic medications. Dr. Collins further opined that Anderson, in his current state, was not competent to make treatment decisions. However, Dr. Collins stated that with the proper medication administered at an inpatient facility, Anderson would likely become competent within the required statutory timeframe. In other words, in Dr. Collins' opinion, Anderson's commitment to a mental health facility wherein he was subject to the involuntary administration of medication for his condition would likely result in his gaining competence, which in turn would enable the State to continue its prosecution of him. This demonstrates that the involuntary administration of mediation to Anderson would significantly further the State's interests. *See Sell*, 539 U.S. at 181.

¶33     Although Anderson argues that Dr. Collins proffered no testimony regarding Anderson's medical history to establish the necessity of involuntarily medicating Anderson, we note that Dr. Collins' report included information relating to Anderson's numerous contacts with BHD, including inpatient treatment, along with her own observations during her interview with him. Anderson further asserts that the State should have presented a particularized treatment plan, as required in other jurisdictions, to eliminate the possibility of "unfettered discretion to experiment" on defendants. Our review of Dr. Collins' report and testimony at the competency hearing does not, however, indicate that such a concern is warranted; treatment for Anderson's condition—schizoaffective disorder, as diagnosed by Dr. Collins and BHD—is known to require the use of psychotropic medications.

¶34     This same reasoning can be applied to Anderson's contention that the trial court failed to consider any less intrusive means to meet the requirements of the third *Sell* factor—that involuntary medication is necessary to further the State's interests. *Id.*, 539 U.S. at 181. Dr. Collins' experience with this disorder allowed her to opine that it is very treatable with psychotropic medications. Furthermore, Anderson's conduct while he was not medicated—striking S.M.G. unprovoked and at random, and his behavior while confined at the CJF—supports the premise that treatment is not only necessary and warranted, but is also in Anderson's best medical interest, the fourth *Sell* factor. *See id.*

¶35     In sum, we conclude that the trial court here properly considered all of the *Sell* factors and applied those standards to the facts of this case. Moreover, there is sufficient evidence in the record to support the trial court's findings as they relate to the *Sell* factors. *See Eason*, 245 Wis. 2d 206, ¶9. We therefore

affirm the trial court's order for the commitment and involuntary administration of medication to Anderson.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.